**Jeffrey Lee GOINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–91–00788–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 12, 1992.

Rehearing Denied Dec. 10, 1992.

Robert R. Durbin, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Mary Lou Keel, Elsa Alcala, Asst. Dist. Attys., Houston, for appellee.

Before SAM BASS, O'CONNOR and WILSON, JJ.

## OPINION

WILSON, Justice.

Appellant pled guilty to the offense of fleeing, and was sentenced to 30–days confinement and fined $200. Appellant was subsequently indicted as an habitual offender for the offense of unauthorized use of a motor vehicle ("UUMV"). Both charges arose out of the same series of events. Appellant's first prosecution for UUMV ended in a mistrial. Appellant was tried a second time, a jury found him guilty, found enhancement paragraphs to be true, and assessed punishment at life imprisonment. This appeal follows appellant's conviction for UUMV, alleging four points of error. We affirm.

Appellant responded to an ad placed by Charles Horton, who was selling a corvette for his boss. On April 6, 1990, Horton arranged for appellant to drive the corvette to a dealership where appellant was to leave it for an inspection. Horton's fellow employee, Guilermo Recinos, rode with appellant to the dealership as Mary Marusek, another employee, followed them. Upon arrival at the dealership, Recinos told a service representative, Janell Hatley, not to release the corvette to anyone but him or Marusek.

Appellant stayed at the dealership after Recinos and Marusek left. He approached Hatley and told her he was going to lunch and would return shortly. Appellant drove away in the corvette and did not return.

On April 24, 1990, Texas Highway Patrol Officer Clyde Morgan saw appellant driving a corvette at 80 miles per hour in a 65 mile per hour zone. A chase ensued, and appellant was arrested after crashing in the corvette.

## I. SPECIAL PLEA

In his first point of error, appellant contends the trial court erred in refusing to submit a jury instruction or special verdict relating to appellant's special plea claiming double jeopardy. Appellant filed a special plea of prior conviction,[1] contending that his prosecution for UUMV was barred by his prior fleeing conviction, since the two prosecutions arose out of the same transaction. Appellant's verified special plea was read to the jury without objection at the beginning of his trial. Specifically, the plea alleged the State would use appellant's fleeing conviction to prove an essential element of UUMV: a lack of consent from the owner of the automobile.

At the close of the evidence, appellant submitted a proposed jury charge concerning his special plea, which was rejected by the trial court.[2] Appellant objected to the trial court's refusal to include a special verdict, or any instruction regarding his special plea. Appellant contends this ruling resulted in reversible error.

■ Texas Code of Criminal Procedure Annotated article 27.07 (Vernon, 1989) provides that "All issues of fact presented by a special plea shall be tried by the trier of the facts on the merits." However, a de-

fendant must present evidence in support of his claim of double jeopardy. *Shaffer v. State*, 477 S.W.2d 873, 875 (Tex.Crim.App. 1971). Submitting a plea of double jeopardy constitutes only pleading, and does not establish as true issues of fact alleged in the plea. *Berrios–Torres v. State*, 802 S.W.2d 91, 95 (Tex.App.—Austin 1990, no pet.). Appellant failed to present any evidence of his conviction for fleeing at trial. "Where no evidence has been introduced in support of such plea, the court is neither required, nor is it its duty, to submit such plea to the jury." *Lindley v. State*, 57 Tex.Crim. 305, 122 S.W. 873 (1909).

Appellant's first point of error is overruled.

## II. DOUBLE JEOPARDY

In his second point of error, appellant contends the trial court erred in proceeding to trial in the face of his double jeopardy claim.[3] Specifically, appellant asserts his conviction for fleeing was a lesser included offense for the purpose of double jeopardy, because it was based upon the same criminal transaction as the UUMV prosecution. Appellant claims the State relied on his fleeing conviction to prove the essential element of a lack of consent from the owner of the motor vehicle.

■ The starting point in double jeopardy analysis is the *"Blockburger* test." *Blockburger* permits successive prosecutions for the same criminal act or transaction under two statutes if each statute requires proof of an additional fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *Ex parte Ramos*, 806 S.W.2d 845, 847 (Tex.Crim.App.1991). However, if one offense is always a neces-

---

1. Article 27.05 provides in pertinent part:
   A defendant's only special plea is that he has already been prosecuted for the same or a different offense arising out of the same criminal episode that was or should have been consolidated into one trial, and that the former prosecution:

   (2) resulted in conviction.
   Tex.Code Crim.Proc.Ann. art. 27.05 (Vernon 1989).

2. The trial court found, as a matter of law, no issue was presented to the jury, because there was no common element between the fleeing offense and the UUMV offense.

3. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

sary element of the second offense, "then the two offenses are the 'same' under *Blockburger*," and a prosecution for both would constitute double jeopardy. *Illinois v. Vitale*, 447 U.S. 410, 419–20, 100 S.Ct. 2260, 2266–67, 65 L.Ed.2d 228 (1980).

The statutory elements of the offense of fleeing are:

(1) A person

(2) driving a motor vehicle

(3) willfully fails or refuses to stop

(4) when a police officer

(5) gives a visual or audible signal to stop.

TEX.REV.CIV.STAT.ANN. art. 6701d, § 186 (Vernon 1977).

The statutory elements of UUMV are:

(1) a person

(2) intentionally or knowingly

(3) operates another's motor-propelled vehicle

(4) without the effective consent of the owner.[4]

TEX.PENAL CODE ANN. § 31.07 (Vernon 1989).

Each of these offenses requires proof of an additional element that the other does not, and neither offense is always a necessary element of the other. Therefore, fleeing and UUMV are not the "same" offense under *Blockburger*.

■ However, a double jeopardy inquiry does not end with the *Blockburger* test. In *Grady v. Corbin*, the Supreme Court held that "the Double Jeopardy Clause bars a subsequent prosecution if, to establish a essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has al-

ready been prosecuted." *Grady v. Corbin*, 495 U.S. 508, 508, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548 (1990).

*Grady* involved a defendant who drove his car across the median line of a two-way highway, killing a passenger in an oncoming car. The defendant pled guilty to the traffic offenses of driving while intoxicated and failure to keep right of the median. Two months later, the State prosecuted him on homicide and assault charges arising out of the same incident. The Supreme Court held this prosecution violated double jeopardy, because the State admitted in its bill of particulars that it would rely on the two previous traffic convictions to prove the homicide and assault charges.[5] 495 U.S. at 522, 110 S.Ct. at 2094.

Appellant analogizes his prosecution for UUMV to *Grady*, citing a statement the prosecutor made on the record during pretrial proceedings:

I don't care that he was convicted of fleeing. I don't want to talk about that. But he did run from the police. And that goes to show the specific element that it was without the effective consent of the complainant.

Because this appeal was taken after appellant's conviction for UUMV, we may examine the trial record to determine if the State did, in fact, prove such conduct.[6]

On direct examination, Officer Morgan testified he saw a white male with a mustache and dark hair drive past him in a blue corvette at a speed in excess of the posted limit. Officer Morgan turned on his patrol lights to indicate the driver should stop. The driver saw him and had time to pull over, but failed to stop. Instead, the cor-

---

**4.** Although the UUMV statute only requires the lack of effective consent of the owner, the Court of Criminal Appeals has held that a defendant must have *knowledge* of the owner's lack of consent to be convicted. *Gardner v. State*, 780 S.W.2d 259, 262–63 (Tex.Crim.App.1989).

**5.** The Court stated its holding would not bar a subsequent prosecution on these charges that relied solely on defendant's driving too fast in heavy rain to establish recklessness or negligence. 495 U.S. at 508, 110 S.Ct. at 2087.

**6.** The Texas Court of Criminal Appeals has interpreted *Grady* to require a three-pronged analysis. The prior conduct that the State will prove must be examined to determine whether:

(1) this is conduct constituting an offense (hence, "criminal conduct"); (2) the defendant has already been prosecuted for this offense; and (3) this "criminal conduct" will be used to establish an *essential element* of the offense charged at the subsequent prosecution.

*Ex parte Ramos*, 806 S.W.2d 845, 847 (Tex.Crim.App.1991) (emphasis original).

vette accelerated at a very high rate of speed. At that point, Officer Morgan "knew for sure he was trying to get away." Morgan said he pursued the corvette, and caught up to it after it crashed. Upon arrival at the crash scene, Morgan recognized the occupant as the person he pursued in the corvette. Morgan identified appellant in the courtroom as the driver of the corvette. Officers Albert Fisher and James Earl Cartlidge also testified they pursued appellant during the same incident.

The record reflects that the State presented testimony of conduct by appellant that met all five elements of fleeing. Appellant urges a literal interpretation of *Grady*, arguing the State, in its effort to establish the essential element of a lack of consent on the UUMV charge, proved conduct that constituted the offense of fleeing, for which appellant was already prosecuted.

In *Grady*, the State admitted in its bill of particulars that it would prove the entirety of the conduct to which the defendant had already pled guilty. "That statement of the prosecution's theory of proof is binding on the State until amended, and the State has not amended it to date." *Grady*, 495 U.S. at 522–23, 110 S.Ct. at 2094 (citations omitted). In the present case, the State was not required to prove fleeing in order to prove UUMV, and no question was put to the jury regarding fleeing. The State's indictment did not rely on appellant's conduct of fleeing to establish an essential element of UUMV, and no bill of particulars was filed. The prosecutor merely made a statement to the judge that fleeing tends to show a lack of consent. This statement was made in the context of a pretrial hearing in which both parties discussed the admissibility of certain evidence. The prosecutor did not argue to the jury that appellant's fleeing showed knowledge of the owner's lack of consent.[7] Her pretrial remark should not be construed as a binding statement of the prosecution's theory of proof.

The Court in *Grady* acknowledged it was not engaging in an "actual evidence" or "same evidence" test. "The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." *Grady*, 495 U.S. at 521, 110 S.Ct. at 2093. Furthermore, the Supreme Court recently said of its holding in *Grady*:

> Taken out of context, and read literally, this language supports the defense of double jeopardy. But we decline to read the language so expansively, because of the context in which *Grady* arose and because of difficulties which have already arisen in its interpretation.

*U.S. v. Felix*, —— U.S. ——, ——–——, 112 S.Ct. 1377, 1383–84, 118 L.Ed.2d 25 (1992).

In *Felix*, a defendant was convicted in a Missouri federal court for attempting to manufacture illegal drugs in that state. At his trial, the prosecution introduced evidence of the defendant's prior involvement in an Oklahoma drug operation to help demonstrate his criminal intent with respect to the Missouri transaction. Later, the defendant was tried in an Oklahoma federal court for conspiracy and substantive counts involving the drug operation in Oklahoma. The Tenth Circuit Court of Appeals reversed most of the substantive Oklahoma convictions, relying on the Supreme Court's holding in *Grady*. The Supreme Court reversed, stating the Court of Appeals had engaged in "an extravagant reading of *Grady*." *Felix*, —— U.S. at ——, 112 S.Ct. at 1382.

> The [Court of Appeals] found it decisive that the Government had introduced evidence of Felix' involvement in the Oklahoma lab to help show criminal intent for purposes of the Missouri trial. But it is clear that, no matter how much evidence of the Oklahoma transactions was introduced by the Government to help show Felix' state of mind, he was not *prosecuted* in the Missouri trial for any of-

---

**7.** The prosecutor did argue that appellant fled on foot, after crashing the corvette, but we find no evidence in the record to support appellant's contention that the prosecutor argued appellant's fleeing in the corvette showed his knowledge of a lack of consent.

fense other than the Missouri attempt offense with which he was charged.

—— U.S. at ——, 112 S.Ct. at 1382 (emphasis original).

The Court noted that "our precedents hold that a mere overlap in proof between two prosecutions does not establish a double jeopardy violation." —— U.S. at ——, 112 S.Ct. at 1382. Then the Court applied "the basic, yet important, principle that the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." *Id.*, —— U.S. at ——, 112 S.Ct. at 1383. It found no double jeopardy violation from the substantive convictions.[8]

In this case, the conduct being prosecuted is appellant's unauthorized use of a motor vehicle. Fleeing is not an essential element of UUMV. Appellant could have been prosecuted for UUMV even if he had not fled, and could have been prosecuted for fleeing even if he had been driving his own car. Although the State presented evidence of conduct that appellant fled from the police, this presentation did not amount to a *prosecution* for that conduct.[9] Nor did the State's use of such conduct elevate it to an element of the current offense.

Texas case law supports this conclusion. In *State v. Marshall*, 814 S.W.2d 789 (Tex. App.—Dallas 1991, pet. ref'd), a defendant who pled guilty to driving while intoxicated claimed his plea barred a subsequent prosecution for failure to stop and render aid (FSRA). Utilizing a *Grady* analysis, the appellate court held "Unless the State is required to prove every element of DWI, including Marshall's intoxication, as a prerequisite to a conviction in the FSRA charge, the successive prosecutions are not for the 'same offense.' " *Marshall*, 814 S.W.2d at 796.

In *State v. Remsing*, 829 S.W.2d 400 (Tex.App.—Fort Worth 1992, pet. ref'd), the court found a defendant's conviction for failure to drive in a single marked lane did not bar his prosecution for driving while intoxicated.

The charging instruments rely on different elements for the two offenses. The fact that the State may offer evidence of appellee's failure to drive in a single marked lane to establish probable cause does not elevate this conduct to an element of the offense.

*Remsing*, 829 S.W.2d at 403.

Appellant's second point of error is overruled.

## III. ENHANCEMENT PARAGRAPH

▇ In his third point of error, appellant contends the trial court erred in denying his motion to dismiss the second enhancement paragraph. The second enhancement paragraph read as follows:

Before the commission of the primary offense, and after the conviction in Cause No. 5621 was final, the Defendant committed the felony of Unauthorized Use of a Motor Vehicle and was convicted on July 13, 1987, in Cause No. 479632, in the 262nd District Court of Harris County, Texas.

Appellant claims this paragraph fails to allege he was convicted of a felony offense, arguing the word "convicted" does not clearly modify the word "felony." We need not reach this argument, however, because appellant failed to object to this paragraph prior to trial. Appellant's trial began on August 26, 1991. On August 27, appellant filed his motion to dismiss the second enhancement paragraph.

The Code of Criminal Procedure provides that:

If the defendant does not object to a defect, error, or irregularity of form or

---

8. The Court also reinstated Felix' conspiracy conviction, relying on a line of precedents holding that a substantive crime and a conspiracy to commit that crime are not the "same" offense for double jeopardy purposes. —— U.S. at ——, 112 S.Ct. at 1384. The Court also reviewed the varied attempts of different courts to interpret

*Grady*, but thought "it best not to enmesh in such subtleties" its doctrine regarding conspiracy. *Id.* at ——, 112 S.Ct. at 1385.

9. The State also presented testimony from Horton, Recinos, and Marusek that appellant did not have permission to take the corvette.

substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.

TEX.CODE CRIM.P.ANN. art. 1.14(b) (Vernon 1992).

Appellant claims, under the authority of *Luken v. State,* 780 S.W.2d 264, 268 (Tex. Crim.App.1989), that his failure to object prior to trial did not constitute a waiver under article 1.14(b). In *Luken,* the court deleted a jury's finding that a defendant had used a deadly weapon in the commission of an offense, because the State failed completely to allege the use of a deadly weapon in the indictment or any other pleading. The court concluded the indictment suffered "no 'defect, error or irregularity of form or substance'" under article 1.14(b). 780 S.W.2d at 268. Thus, in *Luken,* there was nothing for the defendant to object to prior to trial.

In the present case, the State alleged in the second enhancement paragraph that appellant committed a prior felony and was convicted. Appellant had notice of this claim, and his complaint is one of "defect, error or irregularity of form or substance." Therefore, he was required to raise an objection prior to trial under article 1.14(b).

Appellant's third point of error is overruled.

## IV. SPEEDY TRIAL

■ In his final point of error, appellant contends the trial court erred in failing to grant his motion to dismiss for denial of his right to a speedy trial under TEX.CODE CRIM. P.ANN. art. 32A.02 (Vernon 1989). Appellant contends that article 32A.02, although declared unconstitutional in *Meshell v. State,* 739 S.W.2d 246 (Tex.Crim.App.1987), has been revived by the subsequent creation of the Rules of Judicial Administration.

Section 74.024 of the Texas Government Code authorized the Texas Supreme Court to "adopt rules of administration ... for the efficient administration of justice," in-

cluding "nonbinding time standards" for the disposition of cases. TEX.GOV'T CODE ANN. § 74.024(c)(1) (Vernon 1988). The Rules of Judicial Administration resulted. Judicial Administration Rule 6 reads in pertinent part:

> District and statutory county court judges of the county in which cases are filed should, so far as reasonably possible, ensure that all cases are brought to trial or final disposition in conformity with the following time standards:
>
> a. **Criminal Cases.** As provided by Article 32A.02, Code of Criminal Procedure.

TEX.RULES OF JUDICIAL ADMINISTRATION, Rule 6 (1988).

The language in this provision is clearly not mandatory. The rule merely advises that judges "should, as far as reasonably possible," bring to trial cases in accordance with Code of Criminal Procedure Article 32A.02.

■ Moreover, because article 32A.02 has been declared unconstitutional, it can not provide the basis for any right or relief. *Jefferson v. State,* 751 S.W.2d 502 (Tex. Crim.App.1988). Even if the Rules of Judicial Administration somehow revived article 32A.02, it prescribes no time period within which a "trial or final disposition" must be had. Article 32A.02 merely provides time periods within which the State must be prepared for trial.

Appellant's final point of error is overruled. We affirm the judgment of the trial court.