**D.L. JONES, Appellant**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–93–00505–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 10, 1995.

Rehearing Overruled Oct. 12, 1995.

Herbert Coleman, Houston, for appellant.

John B. Holmes, Jr. and Rikke Burke Graber, Houston, for appellee.

Before WILSON and MIRABAL, JJ., and DUGGAN *, J. (assigned).

**OPINION**

WILSON, Justice.

Appellant, D.L. Jones, was convicted by a jury for engaging in organized criminal activity. After finding two enhancement paragraphs true, the jury sentenced appellant to life in prison. On appeal, appellant contends (1) the evidence presented is not legally sufficient to support his conviction; (2) the trial court erred in overruling his motion to suppress certain evidence; (3) the trial court erred by not quashing both enhancement paragraphs; and (4) the second enhancement

---

* Justice Duggan, who retired on December 31, 1994, continues to sit by assignment for the dis- position of this case, which was submitted prior to that date.

paragraph does not allege sufficient facts to support enhancement of his punishment. We affirm.

### Fact summary

Officer William Hefner of the Houston police department testified appellant was a member of an organization that had passed forgeries of company checks throughout Texas, Louisiana, Florida, and Georgia. Individuals recruited by this organization were driven to grocery stores to cash the forged checks on weekends, when it was difficult to verify the validity of the check. The "check cashers" would then turn the proceeds over to the driver. The check cashers received $50 for each check cashed at the end of the trip.

Thackus Dickerson and Charlene Forrey testified at trial that they had cashed checks for this organization. Each testified that while they did not know appellant personally, they had seen him and were told he was the leader of the organization. Forrey testified that on out-of-town trips where "Black" was the driver with whom she was working, she overheard "Black" telephone appellant and report their success. She also testified she went on a trip with appellant to have Louisiana driver's licenses made. Appellant never gave checks directly to Forrey. Dickerson testified that on a trip to Georgia and Florida, he saw appellant typing names on the forged checks. Appellant also had personally given him a bonus.

Officer Hefner testified that in early 1992 he was contacted by a confidential informant about this check forgery ring. Officer Hefner arranged for a Coca–Cola check to be passed to appellant through the same confidential informant at a restaurant. On March 10, 1992, the date set for the transaction, surveillance was set up outside the restaurant and at appellant's house. Additionally, officers were set up inside the restaurant with listening devices placed so they could hear any conversation involving appellant.

The confidential informant was in the restaurant when appellant and a co-defendant, Henry Hines, arrived. The informant pulled out the check and handed it to one of the men. The officer in the restaurant testified both appellant and Hines handled the check. Appellant and Hines then left and were followed back to appellant's house. They went inside the house briefly and then returned to the restaurant, where the check was returned to the informant. The men were arrested as they left the restaurant.

A search warrant for appellant's house was issued. Police seized a computer, a scanning device, a copy machine, counterfeit checks, and several signature stamps. A photocopy of the Coca–Cola check that the informant had given appellant and Hines was found next to the computer. Later, when the data on the computer was examined, a Browning–Ferris Industries check, a Southwestern Bell check, and bank checks were found stored in the computer files.

### Sufficiency of the evidence

In his first point of error, appellant argues the evidence is legally insufficient to support his conviction. He contends the jury charge required the State to prove that all the persons listed in the charge participated in the alleged combination. Because the State did not introduce evidence concerning the participation of four of the persons named in the charge, appellant argues we must reverse and order a judgment of acquittal.

In reviewing the legal sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 155 (Tex.Crim.App.1991). The trier of fact is the sole judge of the credibility of the witnesses and may choose to believe or disbelieve all or any part of a witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

In a jury trial, the evidence is measured against the jury charge. *Fee v. State,*

841 S.W.2d 392, 396 (Tex.Crim.App.1992); *Ortega v. State*, 668 S.W.2d 701, 705 (Tex. Crim.App.1983). The Court of Criminal Appeals has held that there is no such thing as "surplusage in the jury charge," and when the State does not object to a charge that increases its burden, the sufficiency of the evidence is measured against the higher burden found in the charge. *Fee*, 841 S.W.2d at 396; *Ortega*, 668 S.W.2d at 705.

■ A person commits an offense if, with the intent to establish, maintain, or participate in a combination he commits or conspires to commit one or more of various felony offenses, including forgery. *See* TEX.PENAL CODE ANN. § 71.02(a)(1) (Vernon 1994). At the time of the offense alleged, the penal code defined a "combination" as

> three or more persons who collaborate in carrying on criminal activities, although:
>
> (1) participants may not know each other's identity;
>
> (2) membership in the combination may change from time to time; and
>
> (3) participants may stand in a wholesaler-retailer or other arms-length relationship in illicit distribution operations.[1]

The jury charge stated, in relevant part:

> Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, [appellant], heretofore on or about, did then and there unlawfully [sic] the dates from August 1, 1991 through March 10, 1992, did unlawfully, intentionally or knowingly, with intent to establish, maintain, or *participate in a combination* or in the profits of a combination *of three or more persons* who collaborate [sic] in carrying on criminal activities, namely, forgery, *said combination being made up of* [appellant], Henry Hines Jr., Linda Jones, Virgil Merriweather, Cary Blackford, Dierdre Bolden a.k.a. Dierdre Lonette Gooden, Betty Talbert a.k.a. Betty Tolbert, Bonnie

Andrews a.k.a. Lisa Williams a.k.a. Yolonda Abbs, Mary Catherine LeBlanc, Gwendolyn Wright a.k.a. Gwendolyn Adams, Charlene Renee Forrey, Brenda Meriya Reyes, Charlene Winans, Charlene Walker, Jackie Hooks **and** Michelle Evette Jackson, and [appellant] acting alone or with other members of the combination as a party to the offense ... did commit the offense of forgery....

(Emphasis added.) The definition of "combination" provided in the charge precisely tracked the language of the statute.

No evidence was presented concerning the participation of Mary LeBlanc, Gwendolyn Wright (a.k.a. Gwendolyn Adams), Brenda Reyes, and Michelle Jackson in the forgery ring. Appellant argues the evidence is therefore legally insufficient because the charge requires the jury to find that each of the persons listed participated in the combination and the State did not prove that each person listed in the charge participated in the combination as alleged.

Appellant relies on *Fee v. State*, 841 S.W.2d 392, 395–96 (Tex.Crim.App.1992), for his argument that the evidence was legally insufficient and he asserts the language used in the jury charge is similar to the language used in *Fee*. The jury charge in *Fee* stated, in part, as follows:

> [I]f you believe from the evidence beyond a reasonable doubt, that ... Jose L. Araujo, Thomas Scott Bates, Steven Fee, Benjamin A. Morgan, Jerry Lee Pierce, Jose Jorge Trevino, Jr., *and* James Henry Woerner, Jr., ... with intent to establish, maintain and participate in a combination ... did conspire and agree to commit ... [t]heft....

*Id.* at 394 n. 3 (emphasis added). The court in *Fee* held that a jury following the trial court's instructions set out in the charge would have been required to find that the defendant and all others alleged in the indict-

---

1. Act of May 27, 1991, 72nd Leg., R.S., ch. 555, § 1, 1991 Tex.Gen.Laws 1968, *amended by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3698 (current version at TEX.PENAL CODE ANN. § 71.01(a) (Vernon 1994)).

ment conspired to commit theft as a prerequisite to convicting the defendant. *Id.* at 395. Appellant argues this case presents a situation similar to *Fee* because the State did not present evidence of the participation of all members of the alleged combination, and therefore requires acquittal.

The State responds that examining the charge as a whole and considering the statutory definition of "combination" included in the charge, it is clear the jury was required to find only that three or more of the persons listed participated in the combination. Although the charge in *Fee* is similar to the charge in this case, it did not contain the definitional language "of three of more persons." The State argues this language distinguishes the charge used in *Fee*.

The State also relies on this Court's opinion in *Renfro v. State,* 827 S.W.2d 532, 536 (Tex.App.—Houston [1st Dist.] 1992, pet ref'd). In *Renfro,* this Court held that a jury was not required to find which specific individuals listed in the jury charge were part of a combination. *Id.* at 536. The charge in *Renfro* stated, in part:

> Now, if you find from the evidence beyond a reasonable doubt that ... [defendant] ... did ... with intent to establish, maintain, or participate in a combination or in the profits of a combination of five or more persons ... said combination being made up of [defendant] and **at least four** of the following persons....

*Id.* at 535 (emphasis added). Although similar to the charge in this case, the charge in *Renfro* is distinguishable because of the language *"at least four* of the following persons." That language allowed the jury to convict the defendant if they found at least four of the other people listed in the charge participated in the combination. Therefore, in *Renfro* the State limited its burden to proving only the participation of the defendant and at least four other people in the combination.

In the present case, the term "combination" was defined in the charge as consisting of three or more persons, tracking the defini-

tion set out in the penal code. The application paragraph of the charge listed appellant and 15 other persons in the conjunctive, but qualified "combination" as consisting of three or more persons. Therefore, the jury could have logically inserted the definition of "combination" provided in the charge into the application paragraph to read, in part, as follows:

> Now, if you find from the evidence beyond a reasonable doubt that ... [appellant] ... did unlawfully, intentionally or knowingly, with intent to establish, maintain, or participate in a combination or in the profits of a combination of three or more persons who collaborate [sic] in carrying on criminal activities, namely, forgery, said [*three or more persons* ] being made up of [appellant], [14 persons listed] and Michelle Evette Jackson, and [appellant] acting alone or with other members of the [*three or more persons* ] as a party to the offense ... did commit the offense of forgery....

Such a reading of the charge would only require the jury to find appellant participated in a combination including at least two of the other 15 persons named in the charge.

Applying the definition of "combination" given in the charge and the qualification of that term in the application paragraph, we conclude the State was not required to prove the participation of all those persons listed in the charge in a combination with appellant. We hold that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, we hold the evidence was sufficient to support appellant's conviction and we overrule his first point of error.

**Motion to suppress**

In his second, third, and fourth points of error, appellant contends the trial court erred in overruling his motion to suppress evidence seized at his apartment pursuant to a search warrant. Appellant argues the underlying affidavit supporting the warrant contained factual misrepresentations and did not present sufficient facts to create probable cause. Appellant argues the search of his

apartment was therefore in violation of the Fourth Amendment,[2] article I, § 9 of the Texas Constitution, and TEX.CODE CRIM. P.ANN. art. 38.23.

■ At a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Whitten v. State*, 828 S.W.2d 817, 820 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). On appellate review, the evidence presented at the suppression hearing is viewed in the light most favorable to the trial court's ruling to determine whether the trial court abused its discretion in denying the motion to suppress. *Whitten*, 828 S.W.2d at 820.

■ The sufficiency of a search warrant based on an affidavit that contained knowingly or recklessly made false statements was addressed in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The court in *Franks* held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in a warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155–56, 98 S.Ct. at 2676. When it is established that a police officer made statements in a search warrant affidavit that are intentionally false or made with reckless disregard for the truth, the statements must then be excised from the affidavit before determining whether the affidavit affords probable cause for the issuance of the warrant. *Id.* at 156, 98 S.Ct. at 2676; *Hass v. State*, 790 S.W.2d 609, 611 (Tex.Crim.App. 1990); *Robertson v. State*, 701 S.W.2d 665, 668 (Tex.App.—Houston [14th Dist.] 1985, no pet.). Appellant must therefore make an initial showing that the statements he complains of were intentionally made by the officer knowing they were false or with reckless disregard for the truth.

■ The warrant affidavit is signed by Officer Donald Boethal of the Houston police department, and states in relevant part:

> Your Affiant has interviewed Charlie Roberts and David Hefner, both of whom are police officers employed by the Houston Police Department and assigned to the Forgery Division. Roberts and Hefner told your Affiant that they had been contacted by a [sic] informant who for purposes of personal safety will remain confidential. According to Roberts and Hefner, the informant advised that he had been in contact with a [b]lack [f]emale named Lisa. Lisa told the informant that she was part of a ring that included a person known as "D.L.," who were involved in using computer equipment to reproduce company checks and passing the reproduced checks at locations throughout the State of Texas throughout most of 1991 and 1992. The informant told Officers Hefner and Roberts that Lisa told the informant that the person known as "D.L." was the leader of the ring and that he had the computer equipment, including the scanner and printer that he used to reproduce the checks, at his home. The informant further told Officers Hefner and Roberts[,] and they told your Affiant[,] that the person known as "D.L." would be meeting with individuals on March 10, 1992[,] to receive a company check and would take that company check to his residence where he would scan the check into his computer and use that scanned image to reproduce numerous checks to be passed throughout Texas.
>
> ... In November 1991, an individual known to Officers Hefner and Roberts as Charlene Renee Forrey was arrested for passing reproduced checks.... On November 19, 1991, ... Forrey gave a sworn statement to Detective Dan Hollingsworth of the Corsicana Police Department....

2. U.S. CONST. amend. IV.

[Y]our Affiant has read the sworn statement of Charlene Renee Forrey. In her statement, Charlene Renee Forrey admits that she was involved in a ring of individuals including a [b]lack [f]emale named Lisa Williams, who were led by a person named "D.L.," who would pass forged checks that had been reproduced on computer equipment by the person known as "D.L.," and that "D.L." did this unauthorized reproduction at his residence.

... Officers Hefner and Roberts then accessed the Houston Police Department computer base and found that D.L. Jones is an alias name for Kenneth Jones who has previously been arrested for burglary and forgery.

During the period from November 1991 to the date of this affidavit, it was learned that D.L. Jones had moved from the address at 14403 Ella Boulevard, Apartment 1703.... Susan Lintner, a witness who is reputably employed as the apartment complex manager at 14403 Ella Boulevard told Officers Hefner and Roberts and they in turn told your Affiant, that she, Lintner, had been inside apartment no. 1703 prior to D.L. Jones moving out of the apartment, and had observed a great deal of computer equipment including a word processor, a disk drive, a printer, a computer and a laser printer. Mike Millard, a special agent of the F.B.I., told Officers Hefner and Roberts that he, Millard, had checked the Harris County Real Property Records ... and had learned that D.L. Jones, also known as Kenneth Jones[,] had purchased a residence at 11314 Bethnal Green Drive....

On March 10, 1992, Officers Hefner and Roberts set up surveillance on 11314 Bethnal Green Drive and on D.L. Jones. Officers Hefner and Roberts told your Affiant that D.L. Jones was observed receiving a company check and proceeding to his residence at 11314 Bethnal Green Drive where he entered the residence.

The affidavit concluded by requesting a search warrant for the residence at 11314 Bethnal Green and an arrest warrant for appellant.

Appellant contends the affidavit contains the following misrepresentations: (1) the apartment manager, Susan Lintner, went inside appellant's apartment; (2) Lintner personally observed computer equipment inside the apartment; (3) Lintner knew appellant lived in the apartment; and (4) officers Hefner and Roberts saw appellant receive a check. Testimony concerning these alleged misrepresentations was adduced at a hearing on appellant's motion to suppress.

Susan Lintner testified she did not personally go inside appellant's apartment or see any computer equipment, and although she met with Officers Hefner and Roberts, she did not tell them she had personally been inside appellant's apartment. On cross-examination, Lintner admitted she did not remember everything she told the officers. Lintner stated maintenance personnel from the apartment complex informed her of the computer equipment inside the apartment and she then told Officer Roberts. Lintner then faxed a list of the computer equipment, including serial numbers, to Roberts. She admitted she might have given the officer the impression that she had personally been inside the apartment.

Lintner testified she did not go inside the apartment, did not see the equipment there, and did not tell the officers she had been inside the apartment. The statements in the warrant affidavit concerning Lintner's observation of the computer equipment inside appellant's apartment were therefore false. However, Lintner conceded that in her conversations with the investigating officers she could have given them the false impression that she had been inside the apartment. Those officers apparently gave that false impression to the affiant, Boethal. We do not conclude appellant demonstrated the officer made the statements appellant complains of intentionally, knowingly, or with reckless disregard for the truth.

■ Further, even excluding the portion of the affidavit concerning Lintner's state-

ments, the affidavit contains facts sufficient to support a finding of probable cause. The officers had information that appellant was the leader of a forgery ring and used computer equipment at his home to reproduce stolen checks. Both Charlene Forrey and the confidential informant had provided information that appellant kept the computer equipment at his home. Appellant's address was traced to 11314 Bethnal Green, and while under surveillance he was seen going to this house after receiving the company check on March 10, 1992. After excising Lintner's statements, we conclude the affidavit contains sufficient facts to support a finding of probable cause to believe that the computer equipment used to reproduce the checks could be found at appellant's house on Bethnal Green.

As noted above, appellant also complains of alleged factual misrepresentations in the affidavit that Susan Lintner knew appellant lived in the apartment and that officers Hefner and Roberts saw appellant receive a check on March 10, 1992. Our examination of the warrant affidavit does not reveal the presence of these statements. There is no statement in the affidavit that Susan Lintner told the officers she knew appellant lived in apartment number 1703 at 14403 Ella Boulevard. However, at the hearing on the motion to suppress, Lintner testified that appellant's name was on the lease.

In addition, the affidavit does not state that officers Hefner and Roberts personally witnessed appellant receive a check on March 10, 1992. Rather, the affidavit states Hefner and Roberts told the affiant that appellant "was observed" receiving a check. The affidavit does not state who observed appellant receive the check during the surveillance. At the hearing on the motion to suppress, Officer Hefner testified he and Officer Roberts were stationed outside the restaurant on March 10, 1992, and received information by radio from officers positioned inside concerning appellant's reception of the check.

As noted above, appellant must initially demonstrate that the statements he com-plains of were intentionally made by an officer knowing they were false or with reckless disregard for the truth. We conclude appellant has not shown the statements concerning the apartment manager's knowledge of appellant's presence or the observation of appellant receiving the check were false statements made intentionally, knowingly, or with reckless disregard for the truth. Accordingly, we overrule appellant's second, third, and fourth points of error.

**Enhancement paragraph**

 In his fifth and sixth points of error, appellant contends the second enhancement paragraph of the indictment is facially insufficient because it alleged only that he had previously committed a felony but does not allege he was convicted of a felony.

The second enhancement paragraph states, in part: "Before the commission of the primary offense ... [appellant] *committed* the felony of Burglary of a Habitation with Intent to Commit Theft and was *convicted* on July 5, 1978...." (Emphasis added.) Appellant argues this paragraph does not allege he was convicted of a prior felony, but only that he committed the felony of burglary and was then convicted for another, unidentified offense.

We need not reach this argument, however, because appellant did not object to this paragraph before trial. Appellant's trial began on March 9, 1993. The record indicates his motion to dismiss the second enhancement paragraph was filed three days later, on March 12, 1993.

 If a defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives the right to object to the defect, and he may not raise the objection on appeal or in any other postconviction proceeding. Tex.Code Crim.P.Ann. art. 1.14(b) (Vernon Supp.1995); *Studer v. State,* 799 S.W.2d 263, 268 (Tex.Crim.App.1990); *Williams v. State,* 848 S.W.2d 777, 780 (Tex. App.—Houston [14th Dist.] 1993, no pet.);

*Goins v. State,* 841 S.W.2d 527, 532–33 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). Appellant's complaint concerns what he alleges is a defect, error, or irregularity of form or substance in the second enhancement paragraph. Therefore, he was required to raise an objection prior to trial, pursuant to article 1.14(b). We overrule appellant's fifth and sixth points of error.

Finding no reversible error, we affirm the judgment of the trial court.