Opinion issued on June 24, 2004.









     



In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00362-CR




CHARLSIE AMANDA BOLTON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 43124




MEMORANDUM OPINION
          A jury found appellant, Charlsie Amanda Bolton, guilty of murder and assessed
punishment at 40 years’ confinement and a $10,000 fine. In two points of error,
appellant contends that the trial court erred in (1) allowing the State to use grand jury
testimony and (2) refusing to incorporate, in the jury charge, appellant’s requested
instruction on self defense. We affirm.
Background
          Appellant and Zaul Zamora, the complainant, previously lived together for a
few months. On June 18, 2002, Zamora was moving out of appellant’s garage
apartment, and Joshua Harley, his friend, accompanied him to move a couch. 
          Harley testified that, when he and Zamora arrived at appellant’s apartment, they
found a note taped on the garage door that said “Zaul, the couch is Derrick’s and
Derrick jacked me so its mine fool.” They then walked to the main house and talked
to appellant’s brother, Charles. Charles opened the garage door and let them in. 
Harley and Zamora knocked on the apartment door and called appellant’s name
several times. Harley testified that he and Zamora stood and knocked on the door for
approximately five minutes before the door opened on its own. They saw appellant
lying on her back, on a couch, with her arms folded across her chest. As Zamora
walked toward appellant, Harley went to the couch that he and Zamora were there to
move and picked up the cushions. Zamora gently shook appellant attempting to wake
her. Harley then heard Zamora yell that appellant had stabbed him. 
          Zamora died of his stab wounds, and appellant was arrested for his murder. 
While Pearland Police Department Dispatcher Holly Chauvin collected appellant’s
clothing at the police station, appellant told her, “I just didn’t want to deal with him
and the couch.” Appellant also told Chavin that she thought that she was in a lot of
trouble and might be going away for a while. 
          Appellant’s defense at trial was that she was asleep and was startled by Harley
and Zamora’s presence in her apartment. 
Grand Jury Testimony
          In her first point of error, appellant contends that the trial court erred in 
allowing the State to use the grand jury testimony of her brother, Charles, for
impeachment purposes. Appellant argues that Charles’s prior grand jury statements
are hearsay, and, therefore, are inadmissible. We disagree.
          We review a trial court’s evidentiary ruling for an abuse of discretion. Lopez
v. State, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). If the trial court’s ruling is
within the zone of reasonable disagreement, we will not intercede. Id.
          Hearsay is defined as an oral or written “statement, other than one made by the
declarant while testifying at the trial or hearing, offered in evidence to prove the truth
of the matter asserted.” Tex. R. Evid. 801(d); Garcia v. State, 868 S.W.2d 337, 339
(Tex. Crim. App. 1993). Texas Rule of Evidence 802 provides that “hearsay is not
admissible except as provided by statute or these rules.” Tex. R. Evid. 802. Texas
Rule of Evidence 613(a) also permits a party to impeach a witness with a prior
inconsistent statement. Tex. R. Evid. 613(a); Lopez, 86 S.W.3d at 320. To qualify
for admission under the inconsistent-statement exception, the trial court must be
persuaded that the statements are indeed inconsistent. Id. As a predicate, rule 613
directs that, before a witness may be impeached, she must be informed of the
statement’s content, the time and place at which it was made, and the person to whom
it was uttered. Tex. R. Evid. 613(a). If the witness unequivocally admits having
made the statement, extrinsic evidence of the statement may not be admitted. Tex.
R. Evid. 613(a).



          Appellant challenges three instances, during the trial, where the State
introduced grand jury testimony to impeach Charles.


 
          First, Charles testified that he did not remember if, during his telephone
conversation with appellant shortly before Zamora was stabbed, appellant told him
that Zamora and Harley had arrived. The State asked Charles if he remembered
previously giving a statement under oath. Appellant objected to hearsay, and the trial
court overruled the objection and reminded the jury that they could only consider the
evidence for the limited purpose of impeachment and for no other purpose. The State
then asked Charles to silently read a portion of his grand jury testimony to refresh his
memory. Charles stated that he had given the earlier testimony under oath, but now,
he could not recall what appellant had said during the telephone conversation. He
acknowledged that he had previously testified that, during his telephone conversation
with her, appellant told him that “they are here.” 
          Second, Charles testified that, after Zamora and Harley arrived, he did not hear
knocking on appellant’s door. After Charles testified that he was “pretty sure” that
he did not hear knocking, the trial court again gave a limiting instruction to the jury
telling them that they could only consider the testimony for the limited purpose of
impeachment and for no other purpose. The State presented Charles with his grand
jury testimony and asked him if it refreshed his memory. Charles said that it did
refresh his memory but that he could not remember if he heard knocking on
appellant’s door. The State then asked Charles if, previously, under oath, he had
testified that he heard knocking at appellant’s door. He said “Yes.”
          Third, Charles was asked if he had “messed the doorjam and the actual trim
piece” from the garage door leading to appellant’s apartment. Charles denied
breaking into the door. After this testimony, appellant’s trial counsel turned to the
trial court, and said, “I may need a limiting instruction again, Judge,” and the trial
court instructed the jury that the prior statements could only be used for impeachment
and could be considered for no other purpose. The trial court overruled appellant’s
hearsay objection. The State showed Charles his grand jury testimony and asked him
if it refreshed his memory. He said “yes and no.” The State then asked if, under oath,
he had testified that once he had to break appellant’s door for her. He replied, “Yes.” 
          In this case, none of the grand jury testimony used to impeach Charles was
hearsay. The State used Charles’s prior statements for the limited purpose of
attacking his credibility because of his inconsistent statements. Because it was not
offered to prove the truth of the matter asserted, it was not hearsay. See Guidry v.
State, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999). Further, the trial court instructed
the jury that it could only consider the prior grand jury statement for the limited
purpose of impeachment and for no other purpose. Therefore, the State’s use of the
grand jury testimony was not hearsay, and the trial court did not abuse its discretion
in allowing the State to impeach Charles with his grand jury testimony. 
          We overrule appellant’s first point of error.
Self-Defense Instruction
          In her second point of error, appellant contends that the trial court erred in
refusing to submit her requested instruction on self defense. 
          In reviewing the charge, we must determine (1) whether there is error in the
charge and (2) whether sufficient harm resulted requiring reversal. Hutch v. State,
922 S.W.2d 166, 170–71 (Tex. Crim. App.1996); Duke v. State, 950 S.W.2d 424, 426
(Tex. App.—Houston [1st Dist.] 1997, pet. ref’d). 
          If the trial court fails to instruct a jury on the law and on the law as applied to
the facts, a jury cannot perform its function of being the exclusive judge of the facts. 
Doyle v. State, 631 S.W.2d 732, 736 (Tex. Crim. App. 1980). The charge must
clearly apply the law to the facts. Id. at 737. The general rule is that a charge should
be read as a whole and such a rule becomes applicable only when a reviewing court
is judging the application of the law to the facts paragraph and uses the charge as a
whole to flesh out and explain the application paragraph. Id. at 738. 
          An application paragraph on the issue of criminal responsibility is adequate if
(1) it specifies all of the conditions to be met before a conviction is authorized, (2) it
authorizes a conviction under conditions specified by other paragraphs of the jury
charge to which the application paragraph necessarily and unambiguously refers, or
(3) it contains some logically consistent combination of such paragraphs. Degrate
v. State, 86 S.W.3d 751, 753 (Tex. App.—Waco 2002, pet. ref’d). It is unnecessary
to repeat every abstract definition in the application paragraph of the jury charge. 
Dinkins v. State, 894 S.W.2d 330, 339–40 (Tex. Crim. App. 1995) (holding that the
jury charge was not defective when it omitted a culpable mental state in application
paragraph, where definition was given in abstract portion of charge); Jones v. State,
907 S.W.2d 850, 854 (Tex. App.—Houston [1st Dist.] 1995, pet. ref’d) (concluding
that the failure to define “combination” in the application paragraph was not error). 
A general application in the charge is not a total failure to apply the law to the facts. 
See Chatman v. State, 846 S.W.2d 329, 332 (Tex. Crim. App. 1993) (concluding that
the general application of the law of parties to the facts was sufficient to refer the jury
to the abstract instructions on the law of parties). 
          Here, the trial court submitted the following abstract charge to the jury on the
issue of self defense:
Upon the law of self defense[,] you are instructed that a person is
justified in using force against another when and to the degree she
reasonably believes the force is immediately necessary to protect herself
against the other’s use or attempted use of unlawful force. 
When a person is attacked with unlawful deadly force, or she
reasonably believes she is under attack or attempted attack with
unlawful deadly force, and there is created in the mind of such a person
a reasonable expectation or fear of death or serious bodily injury, then
the law excuses or justifies such a person in resorting to deadly force by
any means at her command to the degree that she reasonably believes
immediately necessary, viewed from her standpoint at the time, to
protect herself from such attack. It is not necessary that there be an
actual attack or attempted attack, as a person has a right to defend her
life and person from apparent danger as fully and to the same extent as
she would had the danger been real, provided that she acted upon a
reasonable apprehension of danger, as it appeared to her from her
standpoint at the time, and that she reasonably believed such deadly
force was immediately necessary to protect herself against the other
person’s use or attempted use of unlawful deadly force. 
In determining the existence of real or apparent danger, you
should consider all the facts and circumstances in evidence before you,
all relevant facts and circumstances surrounding the killing, if any, the
previous relationship existing between the accused and the deceased,
together with all relevant facts and circumstances going to show the
condition of the mind of the defendant at the time of the offense, and, in
considering such circumstances, you should place yourselves in the
defendant’s position at that time and view them from her standpoint
alone. 
The use of force against another is not justified in response to
verbal provocation alone. 
A person is justified in using deadly force against another:
(1) if she would be justified in using force against the
other; and 
(2) when and to the degree she reasonably believes the
deadly force is immediately necessary;
(a) to protect herself against the other’s use or attempted
use of unlawful deadly force; or
(b) to protect herself against the other’s imminent
commission of aggravated kidnapping, murder, sexual
assault, aggravated sexual assault, robbery, or aggravated
robbery.

The charge then defined “unlawful,” “reasonable belief,” “deadly force,” “deadly
weapon,” “bodily injury,” and “serious bodily injury.”
          The application paragraph ended with the following language: 
Now, if you believe from the evidence beyond a reasonable doubt,
that the defendant, CHARLSIE AMANDA BOLTON, in Brazoria
County, Texas, on or about the 18th day of June, 2002, did knowingly,
or recklessly, cause the death of Zaul Zamora, by stabbing him with a
knife, but you further find that she was acting in self-defense (as defined
for you above), or if you have a reasonable doubt as to whether she was
acting in self-defense, you will acquit the defendant and say by your
verdict “Not Guilty” of the offenses of Murder, as charged in the
indictment, and Manslaughter.

          Appellant argues that the trial court erred by not replacing the above
application language with a charge that incorporated the following self defense
language that she provided the trial court:
But you further find from the evidence as viewed from the
standpoint of the defendant at that time . . . that from the words or
conduct or both of Zaul Zamora it reasonably appeared to the defendant
that her life or person was in danger and there was created in her mind
a reasonable expectation of fear or death or serious bodily injury from
the use of unlawful deadly force at the hands of Zaul Zamora and that[,]
acting under such apprehension and reasonably believing that the use of
deadly force on her part was immediately necessary to protect herself
against Zaul Zamora’s use or attempted use of unlawful deadly force,
she stabbed him with a knife, then you should acquit the defendant on
the grounds of self-defense or if you have a reasonable doubt as to
whether or not the defendant was acting in self-defense on said occasion
and under the circumstances, then you should give the defendant the
benefit of that doubt and say by your verdict “Not Guilty.”

In this case, the trial court’s application paragraph charged the jury that, if it found
that appellant “was acting in self defense (as defined for you above)” or if it had a
reasonable doubt as to whether she was acting in self defense, it must acquit her. The
application paragraph clearly and unambiguously referred to the prior detailed
definition on self defense that was given in the abstract charge. The jury could have
logically inserted the definition of self defense from the charge into the application
paragraph. See Jones, 907 S.W.2d at 854. Thus, the application paragraph was not
defective, and the jury was not misled or confused by such application under the facts
of the case. Accordingly, the trial court did not err in refusing to incorporate, in the
application paragraph of the jury charge, appellant’s requested instruction on self
defense.
          We overrule appellant’s second point of error.
Conclusion
We affirm the judgment of the trial court. 

                                                             George C. Hanks, Jr.
                                                             Justice
Panel consists of Justices Taft, Hanks, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).