Ismael **ARREDONDO**, Sr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 57664.

Court of Criminal Appeals of Texas,
Panel No. 2.

June 20, 1979.

Robert D. Thorpe, Corpus Christi, court appointed, for appellant.

William B. Mobley, Jr., Dist. Atty. and Eric G. Brown, Asst. Dist. Atty., Corpus Christi, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, TOM G. DAVIS and DALLY, JJ.

OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of involuntary manslaughter.

The punishment is imprisonment for five years.

Appellant contends that the trial court erred in overruling his motion to quash the indictment and his special plea of former conviction, and in failing to submit the special plea to the jury. Appellant also contends that the evidence is insufficient to sustain the conviction and that the prosecutor engaged in improper jury argument.

Late on August 8, 1976, a two-car accident occurred on Greenwood Street outside the Corpus Christi Boy's Club. A dance was being held at the club that night, and a large crowd of mostly teen-aged persons gathered around the scene of this accident. At approximately 1:00 a. m., August 9, a car being driven down Greenwood Street at high speed veered off the street ·and into this crowd, killing four persons, one of whom was Robert Valdez. Appellant was a passenger in this third car, which was being driven by his son.

The indictment alleges, in pertinent part, that on or about August 9, 1976, appellant

"recklessly cause[d] the death of an individual, Robert Valdez, by grabbing the steering wheel of a motor vehicle and pulling said steering wheel to the right while the said Ismael Arredondo, Sr. was a passenger in the right front seat of said motor vehicle, thereby recklessly causing said motor vehicle to veer to the right and strike the said Robert Valdez, thereby fatally injuring the said Robert Valdez, who was standing in the roadway . . . ."

A second count, alleging that appellant caused the deceased's death by accident and mistake while operating a motor vehicle while intoxicated, was dismissed prior to trial.

Art. 21.15, V.A.C.C.P. provides:

"Whenever recklessness or criminal negligence enters into or is a part or element of any offense, or it is charged that the accused acted recklessly or with criminal negligence in the commission of an offense, the complaint, information, or indictment in order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal negligence, and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly or with criminal negligence."

Appellant contends that the indictment fails to allege with reasonable certainty the act or acts relied upon to constitute recklessness. He argues that the acts described in the indictment do not in themselves constitute recklessness, and that the indictment fails to allege in what way the acts constituted recklessness in this case.

Art. 21.15, supra, was construed by this Court in *Townsley v. State*, 538 S.W.2d 411 (Tex.Cr.App.1976). We held that as long as the act relied upon to constitute recklessness is alleged with reasonable certainty so that the accused will be informed of the nature of the reckless act of which he is accused, the State is not required to plead such act in the terms of the statute, V.T.C.A. Penal Code, Sec. 6.03(c), defining recklessly.

In *Townsley v. State, supra,* as in the instant case, the indictment was for involuntary manslaughter under V.T.C.A. Penal Code, Sec. 19.05(a)(1). The indictment in *Townsley* alleged that the defendant

"did then and there recklessly cause the death of Luther Eugene Stark by driving a motor vehicle at an excessive rate of speed while attempting to elude a police officer and recklessly causing said vehicle to run off the roadway and roll over, thereby fatally injuring the said Luther Eugene Stark, who was a passenger in said vehicle . . . ."

We held that this indictment alleged the reckless act with reasonable certainty.

■ The indictment in the instant case is not as artfully drawn as the indictment in *Townsley v. State, supra.* However, as in that case, the instant indictment does not allege merely "that the accused, in committing the offense, acted recklessly." Art. 21.15, V.A.C.C.P. See and cf. *Brown v. State,* 558 S.W.2d 471 (Tex.Cr.App.1977); *Jones v. State,* 388 S.W.2d 716 (Tex.Cr.App.

1965); *Short v. State,* 387 S.W.2d 50 (Tex. Cr.App.1965); *Scott v. State,* 344 S.W.2d 457 (Tex.Cr.App.1961). We hold that the indictment alleges with reasonable certainty the act relied upon to constitute recklessness, said act being "grabbing the steering wheel of a motor vehicle and pulling said steering wheel to the right while [appellant] was a passenger in the right front seat of said motor vehicle, thereby recklessly causing said motor vehicle to veer to the right and strike the said Robert Valdez, thereby fatally injuring the said Robert Valdez . . ."

On September 28, 1976, appellant pled guilty in the Corpus Christi Municipal Court to a complaint alleging that on or about August 9, 1976, he

"appear[ed] in a public place, while under the influence of alcohol to the degree that he might endanger himself or others."

Appellant filed a special plea of prior conviction contending, as he now contends on appeal, that prosecution of the involuntary manslaughter indictment was barred by the prior public intoxication conviction. Appellant relies on *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) and *Benard v. State,* 481 S.W.2d 427 (Tex.Cr. App.1972).

■ Appellant's contention is without merit. The offense of public intoxication and the offense of involuntary manslaughter involve separate acts in violation of separate statutes. Appellant could properly be convicted of both offenses. See *Patterson v. State,* 581 S.W.2d 696 (1979); *Gehrke v. State,* 507 S.W.2d 550 (Tex.Cr.App.1974); *Grant v. State,* 505 S.W.2d 279 (Tex.Cr.App. 1974); *Frazier v. State,* 480 S.W.2d 375 (Tex.Cr.App.1972); *McMillan v. State,* 468 S.W.2d 444 (Tex.Cr.App.1971). The trial court did not err in overruling appellant's special plea of former conviction.

■ The trial court also did not err in failing to submit appellant's special plea to the jury. Art. 27.07, V.A.C.C.P., provides:

"All issues of fact presented by a special plea shall be tried by the trier of facts on the trial on the merits."

However, if conceding the facts averred to be true, the plea in bar would not be good in law, the trial court may overrule it and decline to submit it to the jury. *Thompson v. State,* 99 Tex.Cr.R. 470, 269 S.W. 1048 (Tex.Cr.App.1925). Furthermore, there is nothing in the record to indicate that appellant requested the submission of his special plea to the jury.

Appellant contends that the evidence is insufficient to sustain the conviction. Specifically, he contends that there is no evidence to indicate a jerking or pulling motion by appellant on the steering wheel causing the vehicle to veer to the right.

Juan Benavides testified that he, appellant, and appellant's son spent the night of August 8, 1976, drinking beer at the Yellow Rose bar. They left the bar at approximately 12:50 a. m. on August 9. Benavides got in the back seat of the car, appellant got in the front seat on the passenger's side, and appellant's son, Smiley, drove. Benavides went on to testify as follows:

"Q. And after leaving the Yellow Rose can you tell us what happened after you left the Yellow Rose?

"A. Well, we just took off of the parking lot and I told him to turn right on Greenwood towards town.

"Q. And along that drive could you describe the actions of Mr. Arredondo?

"A. Well, he was just drunk and they were arguing about I don't know what, but he still wanted to drive, or something like that.

"Q. Do you recall him—you say he still wanted to drive—do you recall him doing anything unusual on that drive from the Yellow Rose down Greenwood? Or on Saratoga?

"A. Well, I just told him Smiley was driving all right.

"Q. What was Smiley doing?

"A. Well, he was driving and he was arguing with his father, interrupting him.

"Q. Interrupting him?

"A. Yes.

"Q. Doing what?

"A. He didn't want him to drive.

"Q. Was Mr. Arredondo interrupting his driving, Smiley's driving?

"A. Yes.

"Q. What was he doing?

"A. He was grabbing the steering wheel.

"Q. And what would that cause the car to do when he grabbed the steering wheel? Would it remain going straight or what would happen to the car?

"A. Yes, it would remain going straight.

"Q. Would you state whether or not the car ever went off the road in the ride from the Yellow Rose.

"A. Twice.

"Q. It went off the road twice?

"A. Yes.

"Q. Do you mean it went totally off? Would you describe that for us?

"A. No, sir, just to the shoulder.

"Q. Did the wheels actually go off the cement?

"A. Two did, two of the right side.

"Q. Right?

"A. Yes, right side.

　　*　　*　　*　　*　　*　　*

"Q. Is this on Saratoga or on Greenwood?

"A. Greenwood.

"Q. As you went down Greenwood did they continue to argue about who should drive?

"A. Yes, sir.

"Q. Did you go across Horne Road?

"A. Yes, sir.

"Q. After going across Horne Road, could you describe in detail everything you remember from that point on.

"A. They were still arguing and he was still getting the steering wheel.

"Q. Who, Mr. Arredondo?

"A. Yes.

"Q. What were you doing at this time?

"A. Well, I was yelling to them, 'stop, we were going to have a wreck,' and I said, 'just go ahead and leave him alone and let him drive.'

　　*　　*　　*　　*　　*　　*

"Q. Do you recall approaching the Boys Club?

"A. Yes, sir.

"Q. What was Mr. Arredondo doing then?

"A. He was still grabbing the steering wheel.

"Q. Could you describe what you saw ahead of you in the road, if you saw anything?

"A. I just saw quite a crowd of people.

"Q. What did you do when you saw the crowd of people?

"A. That is when I yelled, for the second time, 'stop it!'

"Q. What happened after that?

"A. Well, we just hit, we just hit the crowd.

"Q. As you approached the crowd, did the car go straight or did it go to the left or to the right or what?

"A. It went to the right.

"Q. What caused it to go to the right?

"A. Must have been the steering wheel.

"Q. What do you mean? What do you mean by 'the steering wheel?'

"A. Well, when he had his hand on the steering wheel."

During cross-examination Benavides testified:

"Q. What you are saying is that from what you recall from the incident, he had his hand on the wheel and he and Smiley were arguing, is that correct?

"A. Yes, sir.

"Q. He could have just as easily pushed the wheel to the left.

"A. I don't know if he was pushing to the right or to the left.

"Q. You don't know for a fact?

"A. No, sir, I don't know.

"Q. Did the car generally move in a direction to the right?

"A. Well, you really couldn't tell because it just gradually went to the right."

Appellant testified as follows:

"Q. As you were driving down Greenwood, how was Smiley driving?

"A. I do not know.

"Q. Did you ever touch the wheel as he was driving down Greenwood?

"A. I do not remember.

"Q. Do you recall going through the intersection of Horne Road and Greenwood?

"A. No.

"Q. Do you remember seeing a crowd of people in the street?

"A. Yes.

"Q. What did you do at that time?

"A. I moved the wheel left for him.

"Q. For him, being who?

"A. To the left side.

"Q. Were you doing that to help your son, Smiley?

"A. Yes. Because the people were in front.

"Q. Do you know what Smiley did then?

"A. No, I did not know.

"Q. Do you recall hitting the people?

"A. Yes."

 Benavides testified that appellant was grabbing the steering wheel as the car approached the crowd at the Boy's Club. The car began moving to the right and into the crowd. This testimony is sufficient to sustain the conviction, even though Benavides was unable to testify as to whether or not appellant actually pulled the steering wheel to the right. Although appellant testified that he was attempting to steer the car to the left and away from the crowd, the jury was free to disbelieve this testimony.

Finally, appellant complains of the following argument by the prosecutor:

"May it please the Court, Counsel for the defense and ladies and gentlemen of the jury: I want to go over this charge with you first before we talk about anything else. It's a long charge and there a lot of ways that you can let this Defendant go and walk out of here.

"MR. THORPE: Your Honor, I am going to object to that and move for a mistrial at this time or an instruction of the verdict. It is highly prejudicial and improper.

"THE COURT: I am going to sustain the objection and overrule your motion for mistrial.

"MR. THORPE: May I request a jury instruction, Your Honor?

"THE COURT: All right the jury will be instructed to disregard the Counsel's statements."

The trial court sustained appellant's general objection and instructed the jury to disregard the prosecutor's statement. This was sufficient to cure the error.

The judgment is affirmed.