**Motion for Rehearing Overruled; Opinion of January 3, 2012 Withdrawn; Affirmed; Substitute Memorandum Opinion filed February 28, 2012.**



In The

# Fourteenth Court of Appeals

———————————

## NO. 14-10-00685-CR

———————————

### CHARLOTTE CARIO BUSSEY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Court Cause No. 09-07-07276-CR**

## SUBSTITUTE MEMORANDUM OPINION

We issued an opinion in this case on January 3, 2012, affirming appellant's conviction. Appellant subsequently filed a motion for rehearing. We deny the motion for rehearing, withdraw our previous opinion, and issue this substitute opinion in its place.

Appellant Charlotte Cario Bussey was convicted on two counts of possession with intent to deliver a controlled substance. Punishment was assessed at twenty-five years'

imprisonment. On appeal, she argues that (1) the trial court erred by failing to submit her special plea of double jeopardy to the jury, (2) the trial court erred by limiting her cross-examination of a State's witness, and (3) the evidence is insufficient to corroborate the testimony of a confidential informant ("CI"). We affirm.

## BACKGROUND

The Conroe Police Department enlisted the aid of a CI to purchase crack cocaine from appellant, a suspected drug dealer within the community. The CI performed two controlled buys, one on April 8, 2009, and the other on April 14, 2009. Before each transaction, the CI met with police detectives at a local church to be searched for any illegal substances already on his person. Once they determined that the CI was clean, the detectives supplied him with an unmarked vehicle leased by the police department. They also wired him with hidden audio recording devices, and on one occasion, a video recorder as well.

The CI drove the unmarked vehicle to appellant's residence with the detectives following closely behind. The detectives parked some distance away, establishing their own surveillance while still in view of appellant's home. When the transactions were complete, the CI and the detectives returned to the police department, making no intervening stops along the way. On both occasions, the CI delivered separate packages of drugs, each of which tested positive for cocaine.

Based on the information gathered from the controlled buys, the police department obtained a warrant on April 15, 2009 to arrest appellant and search her home. The warrant was executed that same day. No narcotics were recovered from appellant's residence as a result of the search, but police did find cocaine in a vehicle parked outside.

The State subsequently brought two separate indictments against appellant. In the first indictment, appellant was accused of possessing four or more grams of cocaine on or

2

about April 15, 2009.[1] In the second indictment, she was accused in two counts of possessing less than one gram of cocaine with intent to deliver; count one was alleged to have occurred on or about April 8, 2009, and count two was alleged to have occurred on or about April 14, 2009.[2] Appellant was tried first for the possession charge stemming from the search on April 15. A jury found her not guilty of that charge.

Following her acquittal, the State proceeded on the two-count indictment involving the earlier charges of possession with intent to deliver. In a pretrial motion, appellant filed a special plea of double jeopardy, requesting a jury instruction that her former prosecution had resulted in acquittal.[3] The trial court rejected appellant's claim of double jeopardy. Because the jury had no issue of double jeopardy to consider, the court prohibited the introduction of evidence regarding appellant's previous acquittal.

During trial, Detective John Key testified that he worked closely with the CI in his investigation of appellant. As the supervising detective on the case, Detective Key said that he concentrated on appellant because the CI had already conducted past dealings with her. Detective Key explained the procedure for running a controlled buy, stating that the vehicle used by the CI is always searched before and after every undercover operation. Although the CI is also required to submit to "an intrusive-type search," Detective Key admitted that he did not ask the CI to remove his shoes or underwear for closer inspection.

Detective Key testified that, during both operations, the CI was watched at all times to ensure that he did not obtain drugs from any source other than appellant. Detective Key even video recorded one of the transactions from his own undercover vehicle. After the

---

[1] This first indictment charged appellant with violating section 481.115 of the Texas Health and Safety Code.

[2] Both counts charged appellant with violating section 481.112 of the Texas Health and Safety Code.

[3] Appellant also argued in her special plea that the trial court should dismiss the State's case with prejudice because "[t]his trial is barred by the double jeopardy clauses of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 14 of the Texas Constitution, and Article 1.10 of the Texas Code of Criminal Procedure."

deliveries were made, Detective Key said that he and the CI returned to the police department, where the CI relinquished the cocaine he had just purchased. On one of the controlled buys, the cocaine was tendered in a cellophane package; on the other, the cocaine was wrapped in an old lottery ticket.

At the end of her direct examination, the prosecutor asked Detective Key if he had ever received a felony arrest warrant for appellant. After Detective Key answered in the affirmative, the prosecutor passed the witness, without ever reaching any details of the search executed on April 15. During her cross-examination, appellant attempted to question Detective Key on his failure to uncover drugs in appellant's home, insisting that the State had opened the door on all matters pertaining to the warrant. The State objected, and the trial court ruled that appellant would not be allowed "to go into the facts of the other case or the fact that there was another case, or the fact that there was a trial and a verdict."

The CI testified that he was a substance abuser suffering from hepatitis C. He admitted to having a longstanding addiction to cocaine, a dependence that resulted in the commission of a number of crimes in his past. When he was released from jail, the CI testified that he started working with the Conroe Police Department in an effort to change his habits and turn his life around. He identified appellant as one of his former drug dealers to Detective Key, and he agreed to conduct two controlled buys on behalf of the police department. In the course of one of those controlled buys, the CI said that appellant supplied him with cocaine when he asked her for "the good stuff." After she delivered the drugs, the CI said appellant advised him, if it was ever late at night, that he should "just come to her bedroom window if I wanted more." Before he left appellant's house, the CI also mentioned that appellant commented on a "bingo ticket" inside the unmarked vehicle.

Appellant took the stand in her own defense. She testified that she knew the CI from prior dealings where he offered to sell her barbecue wood and charcoal. She denied selling cocaine to the CI, claiming instead that on April 8 and April 14, the two had only discussed

4

trading "stolen merchandise or merchandise he said was given to him." Appellant also admitted that she would tell the CI to come to her bedroom window to sell things at night.

## ISSUES PRESENTED

In her first issue, appellant argues that the trial court erred by failing to submit to the jury her special plea of double jeopardy. In her second issue, she argues that the trial court placed an unreasonable restriction on her right to cross-examination. In her third issue, she argues that the evidence does not sufficiently corroborate the testimony of the CI. We address these issues out of order, considering appellant's second issue last.

## DOUBLE JEOPARDY

Appellant first complains that the trial court erred by refusing to submit her special plea to the jury.

Special pleas are governed by articles 27.05 and 27.07 of the Texas Code of Criminal Procedure. Article 27.05 provides that "[a] defendant's only special plea is that he has already been prosecuted for the same or a different offense arising out of the same criminal episode that was or should have been consolidated into one trial, and that the former prosecution . . . resulted in acquittal."[4] Tex. Code Crim. Proc. Ann. art. 27.05(1) (West 2012). Under Article 27.07, the trial court must submit to the jury all issues of fact presented by a special plea unless, after assuming the facts averred to be true, the court determines that the plea is legally insufficient to raise a valid jeopardy claim. Tex. Code Crim. Proc. Ann. art. 27.07; *Apolinar v. State*, 820 S.W.2d 792, 793 (Tex. Crim. App.

---

[4] A defendant may file a special plea under Article 27.05 when asserting a former jeopardy claim, but the special plea will serve only the limited function of preventing successive convictions, not successive prosecutions. *Apolinar v. State*, 820 S.W.2d 792, 793–94 (Tex. Crim. App. 1991); *accord Kelson v. State*, 167 S.W.3d 587, 591–93 (Tex. App.—Beaumont 2005, no pet.); *Waldie v. State*, 923 S.W.2d 152, 157 (Tex. App.—Beaumont 1996, no pet.). To the extent that appellant challenges her "retrial," she was required to submit a pretrial writ of habeas corpus instead of a special plea of double jeopardy. *See Gonzalez v. State*, 8 S.W.3d 640, 643 n.9 (Tex. Crim. App. 2000) ("We have decided that a pretrial writ of habeas corpus is usually the procedural vehicle by which a defendant should raise a 'successive prosecutions for the same offense' double jeopardy claim."); *Apolinar*, 820 S.W.2d at 794 (holding that a special plea afforded no protection against "twice being put to trial").

1991); *Arredondo v. State*, 582 S.W.2d 457, 459 (Tex. Crim. App. [Panel Op.] 1979); *Kelson v. State*, 167 S.W.3d 587, 593 (Tex. App.—Beaumont 2005, no pet.).

Appellant argues that her plea was valid because it was premised on the factual allegation that the cocaine discovered on April 15 was the exact same cocaine she was charged with possessing on April 8 and April 14. If taken as true, we agree with appellant that this fact would present a legally cognizable claim for double jeopardy. Because appellant was charged only with possession of a controlled substance, and not its delivery, the cocaine could have been the same on all three days. Under this abstract possibility, the State could not seek a conviction under the second indictment because appellant was already acquitted of that same "possession." Accordingly, there would have been a fact issue for the jury to decide: whether the cocaine was indeed the same on all three dates.

Although appellant's jeopardy analysis is legally sound, we decline to find error on the particular facts of this case. A claim for double jeopardy may be raised "at the inception of the prosecution under attack," but the facts concerning the special plea must be determined in the course of the trial on the merits. *Apolinar*, 820 S.W.2d at 794 (quoting *Robinson v. Wade*, 686 F.2d 298, 302 n.3 (5th Cir. 1982)). Only after all the evidence has been heard may the issue be submitted to the jury. *See Ex parte Walker*, 813 S.W.2d 570, 571 (Tex. App.—Corpus Christi 1991, pet. ref'd) (observing that determinations on a special plea of double jeopardy may not be made in advance of trial).

In this case, the trial court took judicial notice of appellant's acquittal, but appellant never produced any evidence that her possession charges stemmed from the same aggregate of cocaine. Appellant did not testify that the cocaine was the same on all three dates; her defense was that there was no cocaine. On this record, no rational juror could have found that the State was prosecuting appellant for possessing the same aggregate of cocaine that she was previously found not guilty of possessing. Because the record contains no evidence in support of her plea, we conclude that the trial court did not err by failing to submit it to the jury. *Cf. Dedmon v. State*, 478 S.W.2d 486, 489 (Tex. Crim. App.

6

1972) (holding that issue of double jeopardy could not be reviewed where record contained no evidence in support of defendant's motion to dismiss).

Appellant's first issue is overruled.

## CORROBORATION EVIDENCE

In her third issue, appellant argues that her conviction must be reversed under article 38.141 of the Texas Code of Criminal Procedure because the evidence fails to corroborate the testimony of the CI.

Article 38.141 establishes the "covert-agent rule," which states as follows:

> (a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

> (b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

Tex. Code Crim. Proc. Ann. art. 38.141(a)–(b); *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (referring to Article 38.141 as the "covert-agent rule").

The covert-agent rule derives not from federal or state constitutional principles, but rather from the legislative determination that the testimony of an informant must be taken with a degree of caution. *See Cantelon v. State*, 85 S.W.3d 457, 460 (Tex. App.—Austin 2002, no pet.). The rationale for this rule is that a covert agent often works with the police for self-interested reasons, whether it be for compensation or to have charges against him reduced or dismissed. *Simmons v. State*, 205 S.W.3d 65, 72 (Tex. App.—Fort Worth 2006, no pet.). Because a person's self-interest may generate a corrupt motive for testifying, a covert agent is generally considered a "discredited witness"; therefore, his testimony must be corroborated before a jury may convict the accused. *Cantelon*, 85 S.W.3d at 460; *Young v. State*, 95 S.W.3d 448, 451 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

7

When determining the sufficiency of corroborating evidence, we eliminate the testimony of the covert agent and examine whether the remaining evidence tends to connect the accused to the charged offense. *Malone*, 253 S.W.3d at 258. The "tends to connect" standard is not a high threshold, and it may be satisfied with either direct or circumstantial evidence. *See Randall v. State*, 218 S.W.3d 884, 886–87 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Standing alone, the corroboration need not establish the defendant's guilt beyond a reasonable doubt, but the evidence must show more than just the "mere presence" of the defendant at or near the scene of the crime. *Malone*, 253 S.W.3d at 257; *McAfee v. State*, 204 S.W.3d 868, 871 (Tex. App.—Corpus Christi 2006, pet. ref'd). The evidence is sufficient for purposes of Article 38.141 if other "inculpatory facts and circumstances in evidence tend to connect appellant to the offense." *Randall*, 218 S.W.3d at 886 (citing *Torres v. State*, 137 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2004, no pet.)).

In this case, detectives equipped the CI with hidden recording devices that separately captured the audio of both undercover operations and the video of one. The audiotape for the first controlled buy begins with a detective saying, "Today's date is 4-8-2009, approximately 5:44 p.m. We're going to Ms. Bussey's house on South Second in between MLK South and MLK North to buy sixty dollars worth of crack cocaine." The detective tells the CI to head "straight back to the PD" when the drug deal is complete. After that, approximately five minutes of silence elapse, except for the occasional sounds of wind and passing cars. The next voice heard on the recording is that of the CI, introducing himself to a woman not identified by name on tape. The CI says, "I hope we got some good, I tell you what. I can't find nothing nowhere." The CI later thanks the woman, apparently for an exchange, and she tells him to "come to my window" should he ever return late at night. Before driving away, the woman inquires about a "bingo ticket" in the CI's car. The next and final conversation on the tape is between the CI and the detectives, discussing the information obtained from the unidentified woman.

8

The audio recording for the second controlled buy follows nearly the same format. It begins with a detective saying, "Today's date is 4-14-2009, approximately 5:11 p.m. We're going to Ms. Bussey's house to try to buy a hundred dollars worth of crack cocaine." After a passage of several minutes, the CI arrives at a location and says to a woman with a similar voice, "Tell me you got a hundred of that good shit." Approximately ninety seconds pass, and then the CI says, "Thank you, Miss Charlotte." The woman then offers her phone number, and again advises, "But you know if you come at night to knock on the side." The audiotape ends with the CI discussing the drug deal with the detectives, just as before.

The video evidence reveals that the CI never left his unmarked vehicle during the controlled buy. Although his hidden camera does not affirmatively show a delivery of cocaine, the recording does reflect that something was exchanged between the CI and the woman.

The CI was the only witness who positively identified appellant as the woman in the recordings, but even with his testimony excluded, appellant's identity can be established by other means. At the beginning of the audiotapes, one of the detectives mentions that the CI is heading to "Ms. Bussey's house," and Detective Key testified that he conducted surveillance of appellant's home during both transactions. In the second audiotape, the woman continues to converse with the CI after he refers to her as "Miss Charlotte." Finally, appellant indirectly conceded that she is the woman on the tapes. During appellant's direct examination by defense counsel, appellant testified as follows:

> Q. And I noticed on the video that you have indicated during one of these deals to come to your bedroom window?
>
> A. Yes.
>
> Q. You'd tell him that stuff?
>
> A. Yes, sir.
>
> Q. And what was that in relation to?

A. Because he had been bringing barbecue wood and charcoal. He would bring it late at night.

Q. So?

A. So I told him to knock on my bedroom window.

Q. These two occasions we have been watching videos and listening to tapes of, he said you sold him drugs. What are they about?

A. They were about stolen merchandise or merchandise he said was given to him.

With appellant identified as the woman on the tapes, the corroborating evidence is more than sufficient to connect her to the commission of the charged offenses. Detective Key testified that the CI was searched before each controlled buy, and on both occasions, no controlled substances were found on his person. The recordings show that the CI asked appellant for "some good" on April 8, and for "that good shit" on April 14. During one of these transactions, appellant asked about a "bingo ticket" inside the CI's car. Detective Key testified that the CI delivered cocaine to him after both controlled buys, and on one of those occasions, the cocaine was wrapped in a lottery ticket. This evidence tends to corroborate the CI's testimony that appellant delivered him cocaine on two separate occasions.

Appellant's third issue is overruled.

## CROSS-EXAMINATION

In her second issue, appellant argues that the trial court placed an unreasonable restriction on her right to cross-examine Detective Key.

Appellant sought to cross-examine Detective Key regarding his execution of the search and arrest warrant on April 15. In a conference at the bench, appellant argued that because the prosecution had opened the door on this issue, she was entitled to prove that a search was conducted; that drugs were allegedly found in a car, but not in her house; that she was charged with possession; and that she was ultimately acquitted on that charge. Appellant argues that this testimony was relevant to weighing the CI's credibility,

10

especially considering the detectives' failure to fully search him prior to each controlled buy.

The Rules of Evidence provide that a witness may be cross-examined "on any matter relevant to any issue in the case, including credibility." Tex. R. Evid. 611(b). The right of confrontation is not absolute, however. It guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense might wish. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The trial court may limit the extent of cross-examination for the showing of bias or credibility. *Cantu v. State*, 939 S.W.2d 627, 635 (Tex. Crim. App. 1997). The scope of cross-examination is left to the sound discretion of the trial court, and its decision is not subject to reversal absent a clear abuse of that discretion. *See id.*; *Reyes v. State*, 741 S.W.2d 414, 421 (Tex. Crim. App. 1987).

When considering a defendant's right to confront witnesses against her, the trial court must balance the probative value of the evidence sought to be introduced against the risk its admission may entail. *Cloud v. State*, 567 S.W.2d 801, 802–03 (Tex. Crim. App. 1978). The potential risks include (a) the possibility of embarrassment or harassment, (b) undue prejudice, (c) confusion of the issues, (d) the safety of the witness, and (e) the introduction of cumulative or marginally relevant evidence. *See Van Arsdall*, 475 U.S. at 679; *Cloud*, 567 S.W.2d at 803.

When the prosecutor questioned Detective Key on the subject of the warrant, she limited her examination to appellant's arrest on April 15, not to the search of her home. During the bench conference, the prosecutor emphasized that she had been "very careful to stay away from all the stuff that was found inside the home." Defense counsel insisted that because the search was "tied together" with the arrest warrant, he "should be able to ask [Detective Key] what he did when he arrested her. He searched her house, searched the car, charged her with possession and she was found not guilty."

11

The record makes clear that defense counsel pursued this subject in a backdoor effort to introduce evidence of appellant's acquittal. Insofar as this was appellant's objective, we cannot say that the trial court abused its discretion by restricting the cross-examination. Appellant did not present any facts to the trial court, other than her acquittal, that would have raised a double jeopardy concern in her current prosecution, and thus, testimony regarding her acquittal would not have been relevant to the tier of fact.

After the trial court ruled that appellant could not introduce facts regarding her earlier case, defense counsel requested that he "should be able to say at least that they searched her house and searched her and found nothing on her and leave the other stuff out." The trial court again refused, holding that appellant would not be allowed to "go down that road." We believe that this restriction amounted to an abuse of discretion.

"It is an elementary axiom of the adversary system that a party 'establishes his plea' by offering a theory, explanation, or analysis of that facts of the case different from that of his opponent." *Polvado v. State*, 689 S.W.2d 945, 951 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd). Appellant's defense in this case was that she discussed trading merchandise with the CI, not cocaine. The fact that no cocaine was found on her person or in her house the day after one of the charged offenses would be relevant to assessing whether appellant possessed cocaine at an earlier date.

Although we decide that matters bearing on the search and arrest warrant were relevant in this case, an abuse of discretion in limiting the scope of cross-examination will not necessitate a reversal unless the error resulted in harm. *See Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991). In making this consideration, we conduct the same harmless error analysis based on the three-prong test established in *Van Arsdall* and later adopted in *Shelby*. *Id.* at 547; *Sansom v. State*, 292 S.W.3d 112, 121 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). First, we must assume that the damaging potential of the cross-examination was fully realized. *Shelby*, 819 S.W.2d at 547. In other words, we must assume that the jury was fully informed of the details of the warrant's execution on April

12

15—namely, that no drugs were found in appellant's home or on her person. Second, with that assumption in mind, we review the error in connection with the following list of factors: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* Finally, in light of the first two prongs, we must determine if the error was harmless beyond a reasonable doubt. *Id.*

**A.    The Importance of the Witness's Testimony.** Under questioning by the State, Detective Key testified to matters largely procedural in nature. He said that the CI was required to go through a screening process before he would be allowed to conduct any controlled buys on behalf of the police department. He also explained that confidential informants are useful when infiltrating the narcotic world because, in most cases, they already have existing relationships with drug dealers.

Detective Key further outlined the course of each of the controlled buys. He said that he met with the CI at a local church, where the CI was searched for drugs already on his person. He testified that the CI was followed from the church to appellant's house to ensure that "he makes no other stops along the way." Detective Key also stated that he conducted video surveillance of the transaction from a nearby park, and that he was the person who received the cocaine from the CI following both investigations. Overall, his testimony was of some importance to the prosecution.

**B.    Whether the Testimony Was Cumulative.** Detective Key testified to many of the same facts as the CI. His testimony was cumulative to the extent the State was required to corroborate the testimony of the CI.

**C.    Whether Other Evidence Corroborated or Contradicted the Testimony on Material Points.** Much of Detective Key's testimony was corroborated by the recordings admitted into evidence. The audiotapes begin with discussions instructing the

CI on the proper procedures for conducting the controlled buy. A voice on the tape instructs the CI that he should return to the church if appellant is not at home, and that he should "go straight back to the PD" if the transaction is complete. Detective Key's video recording also shows that surveillance was made of appellant's home during one of the transactions.

Appellant did introduce evidence that contradicted Detective Key's testimony. She testified that she never sold cocaine to the CI, and that the meetings on April 8 and April 14 pertained only to merchandise the CI was trying to sell.

**D.    The Extent of Cross-Examination Otherwise Permitted.** The record shows that appellant was permitted to fully cross-examine Detective Key, except for the testimony regarding the search warrant on April 15. Through her questioning, appellant was able to establish that the CI was compensated for his services with the police department. Appellant also inquired into the extent of the detective's search of the CI, and her cross-examination revealed that the detectives failed to search the inside of his shoes and underwear.

**E.    The Overall Strength of the Prosecution's Case.** The prosecution presented a strong case. The CI testified that appellant sold him cocaine on two occasions. Both controlled buys were captured on hidden recording devices. The CI's testimony was also corroborated by Detective Key, who authenticated the cocaine evidence admitted at trial. Even though no controlled substances were found in appellant's residence on April 15, the record still contains evidence that she possessed cocaine with the intent to deliver on April 8 and April 14.

In light of these factors, we must determine whether the trial court's error was harmless beyond a reasonable doubt. We note that, aside from the testimony from appellant, there was no evidence that the CI requested anything other than drugs during the two controlled buys. The recordings do not reflect that the CI ever offered to sell merchandise to appellant. The recordings also fail to indicate that the CI obtained

14

controlled substances from his shoes, his underwear, or any source other than appellant. Even though the trial court erred by limiting appellant's cross-examination of Detective Key, we cannot say that the error affected the integrity of the process leading to appellant's conviction, or that it contributed to appellant's conviction or punishment beyond a reasonable doubt.

Appellant's second issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.


/s/      Adele Hedges
Chief Justice


Panel consists of Chief Justice Hedges and Justices Christopher and McCally.

Do Not Publish — Tex. R. App. P. 47.2(b).