**Opinion issued January 26, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00557-CR

———————————

**JORDAN LEWIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 81st District Court**
**Wilson County, Texas**
**Trial Court Case No. 13-11-205-CRW**

---

## MEMORANDUM OPINION

Appellant, Jordan Lewis, was found guilty by a jury of the offenses of

aggravated robbery[1] and aggravated assault.[2]  Appellant pleaded true to two

---

[1]     *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2), (3) (Vernon 2011),
        § 31.03(a) (Vernon Supp. 2015).

enhancement paragraphs, and the trial court assessed Appellant's punishment at 50 years in prison for each offense with the sentences to run concurrently. In two issues on appeal, Appellant (1) complains that "[t]he trial court erred in denying [his] First Amended Plea of Double Jeopardy" and (2) asserts that the trial court erred when it did not include his requested jury instruction on spoliation of evidence.[3]

We affirm.

## Background

In 2012, Appellant was incarcerated in the Wilson County jail. At that time, Appellant worked in the jail's kitchen as an inmate trustee, helping to prepare meals for the other inmates. On the morning of March 3, 2012, Appellant obtained a knife, which had an eight-inch blade, from the jail employee in charge of the kitchen for the purpose of cutting up tomatoes. After he had been given the knife, Appellant and the jail employee took the trash outside the jail building. While outside, Appellant fled the jail on foot, sprinting across a field.

---

[2] *See* TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon Supp. 2015), § 22.02(a)(2) (Vernon 2011).

[3] This appeal, originally filed in the Fourth Court of Appeals, San Antonio, Texas, was transferred by the Supreme Court of Texas, pursuant to its docket equalization authority, to the First Court of Appeals, Houston, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) (authorizing transfer of cases).

Appellant ran to a nearby gas station. There, seventy-two-year-old Carolyn Orth was sitting in her parked SUV, waiting for her son, who had gone into the station to purchase some food.

Appellant opened the passenger door of Orth's SUV and got into the vehicle. Displaying what Orth later described as a "butcher knife," Appellant told Orth to drive. When Orth did not comply, Appellant ordered her out of the SUV. Orth got out of the vehicle, but her cell phone and purse remained in the SUV as Appellant drove away from the gas station. Orth ran for help, and her son called 9-1-1. The police had already been alerted to Appellant's jail escape and quickly arrived on the scene.

Meanwhile, Appellant fled on the highway in Orth's SUV with the police in pursuit. As he drove, Appellant used Orth's cell phone to call his mother and another person. Appellant lost control of the vehicle at an intersection, crashing the SUV. He was then apprehended by law enforcement.

On November 22, 2013, Appellant was charged in a two-count indictment with the offenses of aggravated robbery and aggravated assault. The indictment read as follows:

> [O]n or about the 3rd day of March, 2012, . . . Jordan Lewis . . . did
> then and there:

3

## COUNT I, PARAGRAPH A

While in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place, Carolyn Orth, a person 65 years of age or older, in fear of imminent bodily injury or death;

## COUNT I, PARAGRAPH B

While in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Carolyn Orth in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife;

## COUNT II

[I]ntentionally and knowingly threaten Carolyn Orth with imminent bodily injury and did then and there use or exhibit a deadly weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing death or serious bodily injury, during the commission of said assault.

On March 24, 2014, trial began on the indictment, and a jury was selected. That same day, Appellant filed a special plea of double jeopardy. The following day he filed an amended verified special plea. In the plea, Appellant alleged that he "was convicted in this Court and sentenced to 22 months in a State Jail Felony Facility on January 13, 2014, for the offense of Unauthorized Use of a Motor Vehicle for acts committed during the same incident which has resulted in the charge of Aggravated Robbery." Appellant pointed out that unauthorized use of motor vehicle can be a lesser included offense of aggravated robbery and that "[g]reater-inclusive and lesser-included offenses are the same offenses for double

4

jeopardy purposes." Appellant asserted, "[T]his trial is barred by the double jeopardy clauses of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 14 of the Texas Constitution, and Article 1.10 of the Texas Code of Criminal Procedure." In his prayer, Appellant requested the trial court "[to] dismiss the [aggravated-robbery offense] with prejudice, or, alternatively, enter an order authorizing the submission of such issue to the trier of fact." Although the amended special plea was verified, Appellant did not offer the indictment, the judgment of conviction or any other papers from the unauthorized use of a motor vehicle ("UUMV") proceeding.

Before opening statements, the trial court conducted a hearing on Appellant's amended special plea. The State pointed out that the indictment for the aggravated-robbery offense did not specifically charge Appellant with the theft of Orth's motor vehicle. Rather, the indictment charged Appellant with the theft of Orth's "property." The State informed the trial court that the evidence would show that Appellant had also taken Orth's cell phone and her purse, which were in the SUV. During the hearing, the trial judge mentioned that she had not been the judge to preside over the UUMV proceeding.

At the conclusion of the hearing, the trial court stated that the special plea was denied. After presentation of the State's evidence, Appellant re-urged his special plea of double jeopardy, which the trial court again denied.

5

Although he had requested it in in his amended special plea, the special plea of double jeopardy was not submitted to the jury. At the charge conference, Appellant did not submit a requested charge on double jeopardy nor did he object to the charge on that basis.

Appellant did, however, request that the jury charge include a spoliation-of-evidence instruction. In support of his request, Appellant pointed to the testimony of the sheriff's department official, J. Deagen, who was in charge of the Wilson County jail. Deagen testified that, on the day of Appellant's escape, there had been two video-recording cameras in the jail's kitchen. Deagen stated that, when he went to retrieve the video taken by the kitchen's cameras, the system had already purged the video made on the day of the escape.

Whether Appellant used or exhibited a knife was elemental to the aggravated-assault charge. At trial, Appellant disputed that he had a knife when he entered Orth's vehicle. The investigating police officer testified at trial that no knife was ever recovered from the SUV or from the area searched by law enforcement. However, the jail employee in charge of the kitchen testified that an inventory of the knives, following Appellant's escape, showed that one knife was missing from the kitchen. The trial court denied Appellant's request for a spoliation instruction.

The jury found Appellant guilty of both the aggravated robbery and aggravated assault offenses. Appellant chose to have the trial court sentence him. At the conclusion of the sentencing hearing, Appellant again objected that his "rights against double jeopardy [were] violated." Appellant pleaded true to two enhancement allegations, and the trial court sentenced him to 50 years in prison for each offense with the sentences to run concurrently.

Appellant now appeals, raising two issues.

## Double Jeopardy

Appellant frames his first issue as follows: "The trial court erred in denying [his] First Amended Plea of Double Jeopardy." As stated, in his special plea, Appellant requested the trial court to dismiss the aggravated-robbery charge with prejudice, or, alternatively, submit the issue of double jeopardy to the jury. On appeal, Appellant requests that the aggravated-robbery conviction be vacated. He makes no argument that the issue of double jeopardy should have been submitted to the jury.

Articles 27.05 and 27.07 of the Code of Criminal Procedure govern special pleas of double jeopardy. Article 27.05 provides, "A defendant's only special plea is that he has already been prosecuted for the same or a different offense arising out of the same criminal episode that was or should have been consolidated into one trial, and that the former prosecution . . . resulted in conviction." Tex. Code

CRIM. PROC. ANN. art. 27.05(1) (Vernon 2006). Under Article 27.07, the trial court must submit to the jury all issues of fact presented by a special plea unless, after assuming the facts averred to be true, the court determines that the plea is legally insufficient to raise a valid jeopardy claim. *See* TEX. CODE CRIM. PROC. ANN. art. 27.07 (Vernon 2006); *Arredondo v. State*, 582 S.W.2d 457, 459 (Tex. Crim. App. 1979). That is, "if conceding the facts averred in the special plea to be true, the plea in bar would not be good in law, the trial court may overrule it and decline to submit it to the jury." *Arredondo*, 582 S.W.2d at 459; *see also Kelson v. State*, 167 S.W.3d 587, 593 (Tex. App.—Beaumont 2005, no pet.) (discussing function of special plea).

In his special plea, Appellant requested the trial court to vacate the aggravated-robbery charge on the basis that he had been previously prosecuted for the lesser-included offense of unauthorized use of a motor vehicle. At trial and on appeal, the focus of Appellant's double-jeopardy claim is to secure a dismissal of the aggravated-robbery charge. At the hearing on the special plea, Appellant argued that "to have him stand trial again for the same offense is a violation of his right against double jeopardy."

We note that a pre-trial writ of habeas corpus, not a special plea, is the usual procedural vehicle by which a defendant raises a double-jeopardy claim in which he asserts that he is being re-tried for the same offense. *See Gonzalez v. State*, 8

8

S.W.3d 640, 643 n.9 (Tex. Crim. App. 2000) ("We have decided that a pretrial writ of habeas corpus is usually the procedural vehicle by which a defendant should raise a 'successive prosecutions for the same offense' double jeopardy claim."); *Apolinar v. State*, 820 S.W.2d 792, 794 (Tex. Crim. App. 1991) (holding that a special plea afforded no protection against "twice being put to trial"). A defendant may file a special plea of double jeopardy pursuant to Article 27.05, however, the special plea serves only the limited function of preventing successive punishments, not successive prosecutions. *See Apolinar*, 820 S.W.2d at 794; *Kelson*, 167 S.W.3d at 591–93. Although a claim for double jeopardy may be raised "'at the inception of the prosecution under attack,'" the facts underlying the special plea must be determined during trial on the merits. *Apolinar*, 820 S.W.2d at 794 (quoting *Robinson v. Wade*, 686 F.2d 298, 302 n.3 (5th Cir. 1982)). The special plea of double jeopardy is submitted to the jury only after all the evidence has been heard. *See Ex parte Walker*, 813 S.W.2d 570, 571 (Tex. App.—Corpus Christi 1991, pet. ref'd) (observing that determinations on a special plea of double jeopardy may not be made in advance of trial). Thus, a special plea cannot be determined before trial to stop the prosecution in question. *State v. Lara*, 924 S.W.2d 198, 202 (Tex. App.—Corpus Christi 1996, no pet.).

Requiring a defendant to complete a trial before appealing a successive prosecutions claim is not, however, consistent with the double jeopardy guarantee

against the State trying him successively for the same offense. *Kelson*, 167 S.W.3d at 591 (citing *Ex parte Robinson*, 641 S.W.2d 552, 554 (Tex. Crim. App. 1982)). The same considerations would not apply to a multiple punishments claim because the reviewing court can "fully vindicate" the claim on appeal following final judgment. *Id.*

In any event, we note that the San Antonio Court of Appeals has recognized that a trial court may choose to treat a special plea as a habeas application.[4] *See Ex parte Cantu*, 913 S.W.2d 701, 704 (Tex. App.—San Antonio 1995, pet. ref'd). And we are mindful that a double-jeopardy claim may be reviewed for the first time on appeal when "the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez*, 8 S.W.2d at 643; *see also Shaffer v. State*, 477 S.W.2d 873, 875–76 (Tex. Crim. App. 1971).

"A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double-jeopardy claim." *Ex Parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013). The critical inquiry is whether the record before the reviewing court clearly reflects a double jeopardy

---

[4] When an appeal is transferred, we apply the law of the transferor court to the extent required by Texas Rule of Appellate Procedure 41.3. *See* TEX. R. APP. P. 41.3.

10

violation. *Roy v. State*, 76 S.W.3d 87, 93 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

The Double Jeopardy Clause of the United States Constitution is applicable to the states through the Fourteenth Amendment, and it protects an accused from impermissible multiple punishments or successive prosecutions for the same offense after an acquittal or conviction. *Ex parte Amador*, 326 S.W.3d 202, 205 (Tex. Crim. App. 2010); *see* U.S. CONST. amend. V, cl. 2, XIV. Here, Appellant asserts that his rights under the federal double jeopardy clause were violated because he was subjected to successive prosecutions for the same offense after conviction. Specifically, he asserts that that the State's prosecution of him for aggravated robbery violated his federal double-jeopardy rights because he was convicted two months earlier of the lesser-included offense of UUMV. In so doing, he correctly points out that the offense of UUMV can be a lesser-included offense of aggravated robbery. *See Griffin v.* State, 614 S.W.2d 155, 158 n.4 (Tex. Crim. App. 1981); *Roy*, 76 S.W.3d at 96. Appellant also correctly indicates that, for double-jeopardy purposes, a lesser-included offense is legally the same as a greater offense, and is wholly subsumed by the elements of the greater offense, unless the potential lesser-included offense requires proof of a fact not required to establish the greater offense. *See Brown v. Ohio*, 432 U.S. 161, 169, 97 S. Ct.

2221, 2227 (1977); *Ex Parte Castillo*, 469 S.W.3d 165, 168 (Tex. Crim. App. 2015); *Parrish v. State*, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994).

To determine if an offense is a lesser included of another, a court employs the cognate-pleading approach, which requires us to compare the elements of the greater offense as pled to the statutory elements of the potential lesser-included offense in the abstract. *Castillo*, 469 S.W.3d at 169. This analysis is a legal question and does not depend on the evidence offered at trial. *Id.*

If the offenses are legally the same, the next step is to determine whether the offenses are factually the same. *Id.* (citing *Ex parte Benson*, 459 S.W.3d 67, 72 (Tex. Crim. App. 2015)). We determine factual sameness by determining the allowable unit of prosecution and reviewing the trial record to establish how many units have been shown. *Id.* The allowable unit of prosecution of an offense turns on statutory construction and usually requires ascertaining the gravamen, or gravamina, of the offense. *Id*. After reviewing the record, if a court concludes that the offenses are based on the same unit of prosecution, then the offenses are factually the same for successive prosecution purposes. *Id*. To prevail, the claimant must prove legal sameness and factual sameness. *Id.*

Here, however, we cannot determine whether the offenses are factually the same. Whether one crime is a lesser-included offense of another depends upon the offense charged, its statutory elements, and the surrounding facts and

circumstances of the crimes. *See Campbell v. State*, 149 S.W.3d 149, 155–56 (Tex. Crim. App. 2004). That is, not only are the elements of the crime as described in the penal statute influential, but so is the time and place of the crimes, the identities of the victim and the accused in each, and the manner and means by which each crime was committed. *See id.* at 155.

Appellant did not include the charging instrument from the UUMV case. Nor did Appellant include any other filings from the UUMV proceeding, including the judgment of conviction. Although the UUMV offense was purportedly tried in the same court as the instant aggravated-robbery offense, the judge in this case stated on the record that she had not been the presiding judge in the UUMV proceeding. Appellant did not request the trial court to take judicial notice of the UUMV proceedings, nor did the State stipulate to the contents of the charging instrument from that case. *Cf. Roy*, 76 S.W.3d at 94, 99 (holding that convictions for both UUMV and aggravated robbery constituted double jeopardy because unauthorized use was a lesser included offense of aggravated robbery in that case; court acknowledged that the record was "fully developed" because Appellant "presented a complete record of [the] trial" and "[t]he appellate record contain[ed] two separate indictments—one for unauthorized use of motor vehicle and the other for aggravated robbery").

Appellant did file a certified special plea in which he stated that he "was convicted in this Court and sentenced to 22 months in a State Jail Felony Facility on January 13, 2014, for the offense of Unauthorized Use of a Motor Vehicle for acts committed during the same incident which has resulted in the charge of Aggravated Robbery." However, a special plea "should *contain the pleadings of the former prosecution*, show the result of the former proceedings and some final disposition of the case." *Lara*, 924 S.W.2d at 202 (emphasis added); *see also Goins v. State*, 841 S.W.2d 527, 529 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (concluding that defendant must present evidence in support of his claim of double jeopardy; asserting plea of double jeopardy constitutes only pleading and does not establish as true issues of fact alleged in the plea). Appellant's plea did not contain the charging instrument or any filings from the UUMV proceeding.

In a double jeopardy challenge, the defendant bears the burden to provide a record that both establishes the commonality of the offenses and shows that the State will be relying on the same instances of misconduct for which the accused was previously convicted or acquitted. *Ex parte Infante*, 151 S.W.3d 255, 262 (Tex. App.—Texarkana 2004, no pet.). In other words, it is an accused's burden to establish a double jeopardy violation, *Anderson v. State*, 635 S.W.2d 722, 725 (Tex. Crim. App. 1982), and to show that he is entitled to the relief he seeks. *Hoang v. State*, 810 S.W.2d 6, 8 (Tex. App.—Dallas 1991), *aff'd*, 872 S.W.2d 694

(Tex. Crim. App. 1993). Here, Appellant did not meet that burden. Appellant has not provided a complete record from which we can determine whether the convictions for unauthorized use of a motor vehicle and aggravated robbery implicate double jeopardy in this case.[5]

As a result, we overrule Appellant's first issue.

## Spoliation Instruction

In his second issue, Appellant, asserts that "[t]he trial court erred in denying [his] specifically requested charge on spoliation of evidence" with respect to the purged video recorded by the camera in the jail's kitchen on the day of Appellant's escape. He asserts that the video "would have significantly bolstered [his] theory that no knife was employed if he would have been able to access the purged video."

### A.      Standard of Review

We review alleged jury charge error in two steps. First, we determine whether error exists, and if error exists, we review for harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Howard v. State*, 239 S.W.3d 359, 365 (Tex. App.—San Antonio 2007, pet. ref'd).

---

[5]      We note that the Court of Criminal Appeals has addressed double-jeopardy claims in post-trial applications for writ of habeas corpus. *See, e.g., Ex parte Jefferson*, 681 S.W.2d 33, 34 (Tex. Crim. App. 1984) (determining claim of double jeopardy arising from successive convictions for unauthorized use of a vehicle and theft of the same vehicle).

**B. Legal Principles**

Spoliation of evidence concerns the loss or destruction of evidence. *Torres v. State*, 371 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). When the spoliation concerns potentially useful evidence, the defendant bears the burden of establishing that the State lost or destroyed the evidence in bad faith. *See Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010); *Castilla v. State*, 374 S.W.3d 537, 541 (Tex. App.—San Antonio 2012, pet. ref'd); *Torres*, 371 S.W.3d at 319.

The Court of Criminal Appeals has recognized that "'[p]recisely what constitutes 'bad faith' is not clear.'" 322 S.W.3d at 231 (quoting George E. Dix and Robert O. Dawson, 42 TEXAS PRACTICE, 2d ed., § 22.63 (2001)). However, the court also recognized that bad faith is "more than simply being aware that one's action or inaction could result in the loss of something that is recognized to be evidence." *Id.* at 238. Bad faith requires a showing of "some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful." *Id.*

In *Napper*, the court explained that "[b]ad faith cannot be established by showing simply that the analyst destroyed the evidence without thought, or did so because that was the common practice, or did so because the analyst believed unreasonably that he was following the proper procedure." *Id.* When conduct can,

16

at worst, be described as negligent, the failure to preserve evidence does not rise to the level of a due process violation. *See Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 337 (1988).

**C.    Analysis**

Here, Appellant did not show that the kitchen video had been purged in bad faith. To the contrary, the sheriff's department official, J. Deagen, who was in charge of the Wilson County jail, testified on direct examination, "The system had already purged that [kitchen] video for some reason. When I went to try to capture it was already purged off the system." Deagen also stated, "After so many days [the system] overrides and when I went to capture [the video] I didn't realize it was past that limit and had already been purged."

On cross-examination, Deagen stated that the videos were kept for 15 days before the system purged them. He acknowledged that he had waited more than 15 days after Appellant's escape to view the kitchen video, even though he had been investigating the escape since shortly after it occurred.

On re-direct examination, the State elicited the following testimony from Deagen:

Q. Was it error on your part for you not to pull the kitchen video prior to the 15 days?

A. Yes, that was a mistake on my part.

Q. You wish you had pulled that video before 15 days?

A. Why sure I wished I would. There's a lot of things I wished I would have done.

In his brief, Appellant avers that bad faith was shown because Deagen "knowingly let [the video] be purged by the system." However, Appellant offered nothing to controvert Deagen's testimony that he had simply made a mistake in failing to check the video until after it had been purged.

We conclude that the trial court could have reasonably determined that Appellant did not meet his burden to show that the kitchen video was purged in bad faith. *See Napper*, 322 S.W.3d at 229 (holding defendant must show evidence was lost or destroyed by State in bad faith). We hold that the trial court did not abuse its discretion in denying Appellant's request for a spoliation instruction.

We overrule Appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

18